IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH N. BROYLES, STEVEN D. COLLINS, SR., AND EILLEEN COLLINS, as representatives of CA HIGH YIELD FUND, LLC, CA HIGH YIELD OFFSHORE FUND, LTD., CA CORE FIXED INCOME FUND, LLC, CA FOR FIXED INCOME OFFSHORE FUND, LTD., CA STRATEGIC EQUITY FUND, LLC, and CA STRATEGIC EQUITY OFFSHORE FUND, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>CANTOR FITZGERALD & CO., CANTOR FITZGERALD SECURITIES, CANTOR FITZGERALD, L.P., CF GROUP MANAGEMENT, INC., CFLP CFS I HOLDINGS, L.P., CFS CF & CO. HOLDINGS, LLC., CFS CF & CO. I HOLDINGS, L.P., THOMAS JOSEPH ANZALONE, DOUGLAS RANKIN BARNARD, IRVIN GOLDMAN, GINA HUBBELL, EDWARD LASCALA, WILLIAM HOWARD LUTNICK, SHAWN PETER MATTHEWS, STEPHEN M. MERKEL, ANDREW CRAIG WELLS, COMMONWEALTH ADVISORS, INC., WALTER A. MORALES III, JENNIFER O. MORALES, JAMES F. O'BEIRNE, NOEL CALDWELL, WILLIE GERALD WARRINGTON, JR., CA HIGH YIELD FUND, LLC, CA HIGH YIELD OFFSHORE FUND, LTD., CA CORE FIXED INCOME FUND, LLC, CA CORE FIXED INCOME OFFSHORE FUND, LTD., CA STRATEGIC EQUITY FUND, LLC, and CA STRATEGIC EQUITY OFFSHORE FUND, LTD.,<br><br>Defendants. | Civil Action No. _____ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441(b), 1446, 1453, and 15 U.S.C. § 78bb, Defendant CANTOR FITZGERALD & CO. ("Cantor") by and through its undersigned attorneys, removes to this Court the action described in paragraph 1 below.

### THE REMOVED CASE

1. The removed case is a putative class action and derivative action filed on or about November 3, 2010 by Joseph N. Broyles, Steven D. Collins, Sr., and Eileen Collins, as purported representatives of CA High Yield Fund, LLC; CA High Yield Offshore Fund, Ltd.; CA Core Fixed Income Fund, LLC; CA Core Fixed Income Offshore Fund, Ltd.; CA Strategic Equity Fund, LLC; and CA Strategic Equity Offshore Fund, Ltd. (collectively, the "CA Funds"), in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, styled *Joseph N. Broyles, et al. v. Cantor Fitzgerald & Co., et al.*, Suit No. 596445, Section 22 (the "Class Action").

### PAPERS FROM REMOVED ACTION

2. As required by 28 U.S.C. § 1446(a), attached as Exhibit 6 hereto are copies of all process, pleadings, orders, and other papers filed in the state court in the removed case.

### THE NOTICE OF REMOVAL IS TIMELY FILED

3. The Notice for Removal is timely filed. The Petition for Damages (hereinafter, "Complaint") was served on Defendants Commonwealth Advisors, Inc. ("Commonwealth"), Walter Morales, Jennifer Morales, James O'Beirne, Noel Caldwell, Willie Gerald Warrington, and the CA Funds on November 23, 2010. The remaining Defendants that have been served with the Complaint were served after November 23, 2010.

### THE CONSENT REQUIREMENT IS SATISFIED

4. All Defendants in this action consent to removal, although they are not required to do so under the Class Action Fairness Act. *See* 28 U.S.C. § 1453(b). In addition, several Defendants

1

either have not been served or have not properly been served with the Complaint and are not required to consent to removal. *See Defrancesch v. Scottsdale Ins. Co.*, No. 06-6474, 2007 WL 647295, at *4 (E.D. La. Feb. 28, 2007) (petition for removal valid when "all of the properly served defendants at the time of removal consented to removal"). Plaintiffs' attempt to serve several individual Defendants by certified mail addressed to their place of employment does not constitute proper service under Louisiana law. "Louisiana courts have held that service by certified mail to the defendant's place of employment is ineffective." *Hamilton v. Business Partners, Inc.*, No. Civ.A. 96-2366, 1997 WL 567951, at *1 (E.D. La. Sept. 10, 1997); *see also Roper v. Dailey*, 393 So.2d 85, 88 (La. 1980) ("A party can be validly served at his place of business only by citation served on the party personally . . . ."); *Drago v. Drago*, 477 So.2d 786, 788 (La. Ct. App. 1985) ("[A] valid service of process under the Long Arm Statute cannot be effected on a defendant by directing same to his place of employment by certified mail.").

5. The Consent to Removal of Defendants Commonwealth; Walter Morales; Jennifer Morales; James O'Beirne; Noel Caldwell; Willie Gerald Warrington; CA High Yield Fund, LLC; CA High Yield Offshore Fund, Ltd.; CA Core Fixed Income Fund, LLC; CA Core Fixed Income Offshore Fund, Ltd.; CA Strategic Equity Fund, LLC; and CA Strategic Equity Offshore Fund, Ltd. is attached hereto as Exhibit 1. The Consent to Removal of Defendants Cantor Fitzgerald Securities; Cantor Fitzgerald, L.P.; CF Group Management, Inc.; CFLP CFS I Holdings, L.P.; CFS CF & Co. Holdings, LLC; CFS CF & Co. I Holdings, L.P.; Thomas Joseph Anzalone; Douglas Rankin Barnard; Irvin Goldman; Gina Hubbell; Edward LaScala; William Howard Lutnick; Shawn Peter Matthews; Stephen M. Merkel; and Andrew Craig Wells is attached hereto as Exhibit 2.

## VENUE

6. Venue in the Middle District of Louisiana is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division embracing the place where the state court action was pending.

2

## NOTICE TO ADVERSE PARTY AND STATE COURT

7. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs, and a copy is being filed with the Clerk of the Court for the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana. Attached as Exhibit 4 hereto is a copy of the Notice of Filing Notice of Removal along with the accompanying Certificate of Service, which Cantor will serve on Plaintiffs and file in the state court.

## BASES FOR FEDERAL SUBJECT MATTER JURISDICTION

8. 28 U.S.C. § 1441(b) permits removal of any civil action over which the District Court has "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States," *id.*, "without regard to the citizenship or residence of the parties," *id.*

9. This action is removable under 28 U.S.C. § 1441(b) and 15 U.S.C. § 78bb.

10. Under 15 U.S.C. § 78bb(f)(2) (part of the Securities Litigation Uniform Standards Act ("SLUSA")), "[a]ny covered class action brought in any State court involving a covered security . . . shall be removable to the Federal district court for the district in which the action is pending . . . ." *Id*. This case is a covered class action involving a covered security and is removable under SLUSA.

11. In the alternative, this action is removable under 28 U.S.C. § 1453 and 28 U.S.C. § 1332(d) pursuant to the Class Action Fairness Act ("CAFA"). Jurisdiction under CAFA exists because: (1) there is minimal diversity, i.e., at least one member of the putative plaintiff class is a citizen of a State different from any defendant, *see* 28 U.S.C. § 1332(d)(2)(A); (2) the number of putative class members exceeds 100, *see* 28 U.S.C. § 1332(d)(5)(B); and (3) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, *see* 28 U.S.C. § 1332(d)(2).

## Removal Under SLUSA (15 U.S.C. § 78bb)

12. Under 15 U.S.C. § 78bb(f), "[a]ny covered class action" "based upon the statutory or common law of any State . . . by any private party alleging . . . a misrepresentation or

omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)–(2), "shall be removable" to federal court, 15 U.S.C. § 78bb(f)(2); *see also* 15 U.S.C. § 77p(b). An action is removable under SLUSA, and "SLUSA preempts a securities class action[,] if four conditions are satisfied: (1) the action is a 'covered class action'; (2) the claims are based on state law; (3) the action involves one or more 'covered securities'; and (4) the claims allege a misrepresentation or omission of material fact 'in connection with the purchase or sale' of a covered security." *In re Enron Corp. Secs.*, 535 F.3d 325, 338-39 (5th Cir. 2008) (citation omitted).

13. SLUSA is intended to be broadly construed. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006); *G.F. Thomas Investments, L.P. v. CLECO Corp.*, 317 F. Supp. 2d 673, 679 (W.D. La. 2004) (collecting cases), *aff'd*, 123 F. App'x 155 (5th Cir. 2005). "A narrow reading of the statute would . . . run contrary to SLUSA's stated purpose . . . ." *Dabit*, 547 U.S. at 86.

14. Courts must look to the substance of a complaint's allegations in applying SLUSA to prevent a plaintiff from eluding SLUSA through artful pleading. *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3326 (2010).

15. All of the requirements for removal under SLUSA are satisfied in this case.

16. With respect to the first requirement, a covered class action under SLUSA is any suit in which:

> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members . . . .

15 U.S.C. § 78bb(f)(5)(B)(i).

4

Case 3:10-cv-00857-JJB -SCR   Document 1    12/22/10   Page 5 of 18

17. The instant action is a "covered class action" under SLUSA. Plaintiffs seek damages on behalf of more than 50 prospective class members and allege that questions of law or fact common to members of the prospective class predominate over any questions affecting only individual members.

18. Although the Complaint is nominally styled as a derivative suit, the Complaint alleges that the suit may "be certified as a class action under La. C.C.P. art. 613." Compl. ¶ 16. The Complaint alleges that "this action may properly be maintained as a class action pursuant to the provisions of La. C.C.P. art. 591 and 611 *et seq.*," Compl. ¶ 35, and that, to the extent the action is maintained as a class action, "the plaintiffs respectfully request that they be permitted to proceed as representatives of, and on behalf of, . . . putative class members." Compl. ¶ 25. The Complaint also contains numerous class action allegations. Compl. ¶¶ 26-35.

19. The Complaint alleges that Plaintiffs estimate that the total number of class members will "be around 100 persons, and potentially less than 100." Compl. ¶ 16. The Complaint alleges that "common questions of Louisiana law and fact exist as to the CA Funds and all members of the Class and predominate over any questions affecting only individual members of the Class." Compl. ¶ 28.

20. An "exclusively derivative action brought by one or more shareholders on behalf of a corporation," 15 U.S.C. § 78bb(f)(5)(C), is not a covered class action under SLUSA. This action is not an exclusively derivative action, as it also alleges a putative class action. Nor is it brought by one or more shareholders on behalf of a corporation. None of the CA Funds is a corporation. *See* Compl. ¶¶ 7 (alleging that CA funds are either limited liability companies or Cayman Islands exempted companies).

5

21.     The Complaint satisfies the second requirement for removal under SLUSA, as all of the claims asserted in the Complaint are based on state law.  The Complaint alleges that the claims asserted arise "solely under Louisiana law" and that there are "no claims arising under the laws of the United States."  Compl. ¶ 15; *see also* Compl. ¶ 103 (alleging violations of Louisiana law).

22.     The Complaint satisfies the third requirement for removal under SLUSA, as it involves one or more covered securities.  A "covered security" is one that is:  "listed, or authorized for listing on a national securities exchange," "a security of the same issuer that is equal in seniority or that is a senior security to a security" listed on a national securities exchange, or is "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940."  15 U.S.C. § 77r(b)(1)- (2) (cross-referenced in 15 U.S.C. § 78bb(f)(5)(E)).  As discussed *infra*, the Complaint involves one or more covered securities.

23.     The Complaint also satisfies the fourth requirement for removal under SLUSA, as it alleges a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security.

24.     The Supreme Court has defined "in connection with" very broadly to encompass circumstances where "the scheme to defraud and the sale of securities coincide."  *SEC v. Zandford*, 535 U.S. 813, 822-23 (2002) (quotations omitted).  In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), the Supreme Court applied this definition of "in connection with" to SLUSA, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."  *Id.* at 85.

25. The Complaint alleges "misrepresentations, misstatements and omissions of material fact made to the CA Funds in connection with the sale of Collybus and/or other security-related transactions." Compl. ¶ 1. The misrepresentations and omissions of material fact alleged in the Complaint were made "in connection with" one or more covered securities.

26. *First*, the Complaint alleges that, "[i]n approximately 2006, [Defendants] Commonwealth and Morales . . . recommended to plaintiffs and other Commonwealth clients that they 'pool' their investment assets together in order to obtain better collective buying power and, thus, a better return on their investments *without changing the Investors' individual investment strategies*." Compl. ¶ 37 (emphasis added). The Complaint alleges that "Commonwealth began liquidating Investors' investment assets and using the cash to purchase interests in one or more 'pooled-asset' hedge funds created and managed by Commonwealth." Compl. ¶ 38. It further alleges that, "[b]y November of 2007, plaintiffs' entire investment portfolios had been liquidated by Commonwealth, and this money in turn had been used by Commonwealth to purchase, on plaintiffs' behalf, ownership interests in the CA Funds." Compl. ¶ 38.

27. The investment assets owned by Plaintiffs that allegedly were sold in order for Plaintiffs to purchase interests in the CA Funds included covered securities.

28. This Court may consider extrinsic evidence in evaluating removal of this action under SLUSA. *See, e.g.*, *Romano v. Kazacos*, 609 F.3d 512, 520-21 (2d Cir. 2010); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692 (S.D.N.Y. 2006) ("[A]n exception to th[e] 'well-pleaded complaint' rule exists where federal law completely preempts a given field, and, in enacting SLUSA, Congress could not have spoken more clearly about its intention to completely preempt the field of certain types of securities class actions by essentially

converting a state law claim into a federal claim and creating federal jurisdiction and venue for specified types of state securities fraud claims."); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 999 n.19 (C.D. Cal. 2002) ("The court may look beyond the allegations of the complaint in evaluating whether the state law claims are removable under SLUSA.") (collecting cases).

29. Joseph N. Broyles, the lead Plaintiff in this action, has filed a companion state court class action captioned *Broyles v. Cantor Fitzgerald & Co., et al.*, Suit No. 594747, Section 23 (19th Judicial District Court, Parish of East Baton Rouge, LA) (the "Companion Class Action").[1] The allegations in the Companion Class Action Complaint (Exhibit 3 hereto) provide further detail regarding the covered securities that Plaintiff Broyles allegedly sold in order to invest in the CA Funds. The Companion Class Action Complaint also makes clear that Plaintiff Broyles alleges that he was induced to sell covered securities based on misrepresentations or omissions of material fact.

30. The Companion Class Action Complaint alleges that Plaintiff Broyles' original investment account with Commonwealth was composed of "stocks, bonds, mutual funds, asset-backed securities, and money markets." Ex. 3 ¶ 21. Plaintiff Broyles alleges that prior to his investment the CA Funds, "he owned numerous shares in various, publically-traded stocks, bonds, and mutual funds." Ex. 3 ¶ 25. Plaintiff Broyles alleges that he was induced to sell his holdings of publicly-traded "stocks, bonds, mutual funds, asset-backed securities, and money markets," Ex. 3 ¶ 21, in reliance on misstatements and omissions by Commonwealth. Ex. 3 ¶ 22. He further alleges that, "[b]y November of 2007, Broyles' entire investment portfolio had been

---

[1] Defendants have removed the Companion Class Action to this Court via a separate Notice of Removal. The Companion Class Action Complaint is attached as Exhibit 3 to this Notice of Removal.

8

liquidated by Commonwealth for a total of approximately $3.2 million, and this money in turn had been used by Commonwealth to purchase, on Broyles' behalf, ownership interests in [the CA Funds]." Ex. 3 ¶ 23; *see also* Ex. 3 ¶ 2 (alleging that Commonwealth made factual misrepresentations and omitted material facts in investing Plaintiff in the CA Funds). Plaintiff Broyles' allegation that he sold publicly-traded stocks and other publicly-traded securities in reliance on material misrepresentations or omissions by Commonwealth is a sufficient basis for removal under SLUSA.

31. *Second*, the Complaint alleges that Defendants Commonwealth and Morales recommended that Plaintiffs enter into pooled-asset hedge funds (the CA Funds), which would allow "a better return on their investments without changing the Investors' individual investment strategies." Compl. ¶¶ 37-38. The Complaint alleges that "[e]ach of the CA funds was supposed to have a different investment strategy and, thus, different holdings, as represented by Commonwealth and as indicated by the names of the various CA Funds*, i.e.*, high-yield, fixed income, equities. In short, there was supposed to be diversification among the funds" Compl. ¶ 40. The Complaint further alleges that, in fact, there "is no diversification between the funds" and that "each of the CA Funds have owned the same, illiquid asset since at least June of 2008: the A-2 tranche of [the] Collybus [collateralized debt obligation, or CDO]." Compl. ¶ 40.

32. The equity securities in which the CA Funds allegedly were supposed to invest would be covered securities because they would be listed on national exchanges. Similarly, to the extent that the CA Funds allegedly were to invest in high-yield and fixed income securities issued by corporations, those securities are would be covered securities since they would be senior securities to the corporate issuer's equity securities listed on a national exchange.

9

33. The Companion Class Action Complaint further demonstrates that Plaintiffs allege that they purchased the CA Funds in reliance on alleged misrepresentations that the CA Funds would invest in and purchase covered securities. The Companion Class Action Complaint alleges that Defendants Commonwealth and Morales recommended to Plaintiff Broyles and other clients that they liquidate their current holdings in covered securities and invest in the CA Funds, "in order to obtain better collective buying power and, thus, a better return *on what Broyles was led to believe would be the same diversified, conservative investments he held in his individual investment account*." Ex. 3 ¶ 22 (emphasis added). The Companion Class Action Complaint alleges that "*Commonwealth specifically represented to Broyles that his investment allocation strategy would not change and assured Broyles that his investments would, in fact, be just as safe as his previous investments. Relying upon these misstatements and omissions of the truth, Broyles agreed to this new investment approach.*" Ex. 3 ¶ 22 (emphasis added). The Companion Class Action Complaint also alleges that, "[i]n connection with the sales of the CA Funds to Broyles, Commonwealth . . . misrepresented and omitted the truth, made misstatements and omissions of material fact . . . and otherwise misrepresented, withheld, and/or failed to disclose information which, by law, Commonwealth was required to disclose to Broyles." Ex. 3 ¶ 29. The Companion Class Action Complaint alleges, for example, that "Commonwealth failed to disclose the true nature of the CA Funds; how the funds functioned; . . . [and] the investment strategies of the funds and how these strategies differed from the investment strategy of Broyles." Ex. 3 ¶ 29. The Companion Class Action Complaint alleges that "the CA Funds were unregulated, high risk hedge funds; however, Commonwealth led Broyles to believe that the funds functioned in essentially the same way as a publically-traded mutual fund." Ex. 3 ¶ 29. It is thus clear that Plaintiff Broyles, the lead Plaintiff, alleges that he was induced to purchase

10

shares in the CA Funds based on misrepresentations that the CA Funds would invest in covered securities. This alone is sufficient for removal under SLUSA.

34. The Complaint also alleges that Plaintiffs continued to hold their investments in the CA Funds because, "[a]s a result of the actions of Cantor, Commonwealth and other defendants in regard to the 2007 Collybus deal, plaintiffs and other Investors were led to believe that their investments were safe, stable, and secure." Compl. ¶ 70; *see also* Compl. ¶ 93 (alleging that, "[a]s a result of the actions of Cantor, Commonwealth and other defendants in regard to the 2008 Collybus deal, plaintiffs and other Investors were led to believe that their investments were safe, stable, and secure"); Compl. ¶ 101 (alleging that investors were lulled into a false sense of security).

35. Even if the CA Funds never actually purchased, sold, or held a covered security, the allegation that Plaintiffs were deceived into believing that the CA Funds would hold covered securities (high-yield, fixed income, equities, etc.) is a sufficient misrepresentation "in connection with" a covered security for SLUSA to apply. In *Barron v. Igolnikov*, No. 09 Civ. 4471(TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010), for example, the court held that "it is not necessary that the purchase or sale actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit." *Id*. at *4. There, the plaintiff sued hedge funds of which she was a limited partner because the funds had invested with Bernie Madoff. The defendants argued that no covered securities had actually been sold or purchased by the hedge funds, which were not themselves covered securities. The court determined that the state law claims were nevertheless preempted by SLUSA, based on the allegation that the plaintiff was informed that the funds would purchase covered securities. *Id.*

11

Case 3:10-cv-00857-JJB -SCR   Document 1   12/22/10   Page 12 of 18

36. *Third*, on information and belief the Complaint alleges that the CA Funds sold covered securities under circumstances in which alleged fraud "'coincide[d]' with a securities transaction—whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85.[2]

37. The Complaint alleges that, in 2007, "the CA Funds . . . held liquid, marketable assets." Compl. ¶ 44. The Complaint alleges that Commonwealth transferred "certain assets held by the CA Funds . . . to Cantor and/or Collybus for inclusion as Collybus collateral." Compl. ¶ 53. The Complaint further alleges that "Commonwealth used valuable assets and/or cash owned by the CA Funds to effectuate the 2007 Collybus deal and/or to purchase the Collybus C, D, and equity tranches." Compl. ¶ 61. On information and belief, one or more CA Funds owned a covered security during the relevant time frame. The Complaint alleges numerous misrepresentations and omissions of material fact in connection with "the 2007 Collybus deal." Compl. ¶¶ 63-68. Accordingly, on information and belief the Complaint alleges a misrepresentation or omission in connection with the purchase or sale of a covered security, namely the CA Funds' sale or transfer of valuable assets in order to invest in Collybus in 2007.

38. The Complaint also alleges that the CA Funds "impermissibly used valuable assets and cash" to effectuate "the 2008 Collybus deal and/or to purchase the Collybus A-2 tranche," Compl. ¶ 80, and that "many of the CA Funds assets that were sold as part of the purchase of the Collybus A-2 tranche were marketable and capable of liquidation for substantial value," Compl. ¶ 80. On information and belief, one or more CA Funds owned a covered security during the relevant time frame. The Complaint alleges misrepresentations and

---

[2] SLUSA applies to state law claims where the plaintiffs allegedly held an interest in an investment vehicle that invested in covered securities, even if the interest in the investment vehicle is not itself a "covered security." *See, e.g.*, *Levinson v. PSCC Servs., Inc.*, No. 3:09-CV-0269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009); *City of Chattanooga v. Hartford Life ins. Co.*, No. 3:09-CV-516, 2009 U.S. Dist. LEXIS 119930, at *6-7 (D. Conn. Dec. 22, 2009).

12

omissions in connection with the 2008 Collybus deal. Compl. ¶¶ 89-91. Accordingly, on information and belief the Complaint alleges a misrepresentation or omission in connection with the purchase or sale of a covered security, namely the CA Funds' sale or transfer of valuable assets in order to invest in the Collybus A-2 tranche in 2008. The Complaint alleges that, "had the 2008 Collybus deal not taken place, the CA Funds would still hold the assets that were given up in the 2008 Collybus deal and the CA Funds currently would be capable of liquidation at substantial value to Investors." Compl. ¶ 80.

39. For all of the above reasons, the instant action is a "covered class action" by a private party alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security" and is removable under SLUSA.

**Alternative Grounds for Removal Exist Under CAFA (28 U.S.C. §§ 1332, 1453)**

40. In the alternative, this action is removable under CAFA.[3]

41. Under CAFA, this Court has original jurisdiction over any class action in which the matter in controversy exceeds $5 million and in which any member of the proposed class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2). The number of members of all proposed plaintiff classes in the aggregate cannot be less than 100. 28 U.S.C. § 1332(d)(5)(B).

42. Under CAFA, a class action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b).

43. All of the requirements for CAFA jurisdiction are satisfied here.

---

[3] CAFA does not apply to a class action that solely involves a claim concerning a covered security. 28 U.S.C. § 1453(d). The Complaint here does not solely involve a claim concerning a covered security, as the Complaint alleges that neither Collybus nor the CA Funds are covered securities. *See* Compl. ¶ 2 (alleging that CA Funds are hedge funds); Compl. ¶ 17 (alleging that Collybus was "an unregistered, exempted, privately-traded security").

13

44. First, this is a class action. As discussed above, although the Complaint is nominally styled as a derivative suit, the Complaint alleges that this suit may "be certified as a class action under La. C.C.P. art. 613." Compl. ¶ 16. The Complaint also alleges that "this action may properly be maintained as a class action pursuant to the provisions of La. C.C.P. art. 591 and 611 *et seq.*," Compl. ¶ 35, and that, to the extent the action is maintained as a class action, "the plaintiffs respectfully request that they be permitted to proceed as representatives of, and on behalf of, . . . putative class members." Compl. ¶ 25. The Complaint contains numerous class action allegations. Compl. ¶¶ 26-35.

45. Second, the amount in controversy in this action exceeds $5 million. The Complaint alleges that the CA Funds have sustained "hundreds of millions of dollars in losses" as a result of Defendants' alleged conduct. Compl. ¶ 1. The Complaint further alleges that the CA Funds lost $430 million as a result of Cantor's alleged conduct, Compl. ¶ 111, and that the CA Funds "have lost millions of dollars in 'fees' which have been collected by the defendants in connection with their tortious actions," Compl. ¶ 111. The Complaint seeks to recover, *inter alia*, "all cash paid and the fair value of all consideration given . . . in connection with the sales of Collybus and any Collybus-related transactions," Compl. ¶ 111, and alleges that "the CA Funds and other Commonwealth-controlled funds have paid Cantor approximately $300,000,000 for the Collybus A-2 tranche" alone, Compl. ¶ 86. Thus, the amount in controversy far exceeds $5 million.

46. Third, minimal diversity exists in this case because at least one putative class member is a citizen of a state different from any Defendant. The representative Plaintiffs are allegedly citizens of Louisiana. Compl. ¶ 7. Cantor is a citizen of New York. Compl. ¶ 8(a).

47. Finally, the number of members of the proposed Plaintiff class is not less than 100. The proposed class is alleged to include all persons "who were members or shareholders" in the CA Funds. Compl. ¶ 25(a). There were more than 100 investors in the CA Funds. *See* Declaration of Erin Despot (Exhibit 5) ¶ 3. Thus, the putative class has in excess of 100 members.[4]

48. Pursuant to 28 U.S.C. § 1332(d)(9)(B), CAFA does not apply to class actions that "'solely involve claims that relate to matters of corporate governance arising out of state law.'" *In re Textainer P'Ship Sec. Litig.*, No. C 05-0969 MMC, 2005 WL 1791559, at *4 (N.D. Cal. July 27, 2005) (quoting Senate report regarding CAFA exceptions). This exception to CAFA jurisdiction, as to which plaintiffs bear the burden of proof, has no application here, because the instant action does not solely involve claims relating to matters of corporate governance. The Complaint alleges a scheme to defraud investors in the CA Funds, as well as "misrepresentations, misstatements and omissions made to the CA Funds in connection with the sale of Collybus and/or other security-related transactions." Compl. ¶ 1. The Complaint makes allegations against Cantor and other third parties and alleges securities fraud. *E.g.*, Compl. ¶ 103. Indeed, the Complaint in the Companion Class Action (Exhibit 3), which is not pled as a derivative suit, contains the same material factual allegations as the Complaint in this action.

49. The exception to CAFA jurisdiction for class actions that solely involve a claim "that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security," 28 U.S.C. § 1332(d)(9)(C), as to which plaintiffs bear the burden of proof, also does not apply here. That exception is "reserved for disputes over the

---

[4] "[S]everal district courts have held that the 100 member class provision (§ 1332(d)(5)(B)) is not a requirement of CAFA jurisdiction, but rather, is an exception to CAFA jurisdiction, which must be established by the party opposing removal, not the removing party." *DeHart v. BP Am., Inc.*, No. 09 CV 0626, 2010 WL 231744, at *9 (W.D. La. Jan. 14, 2010).

15

meaning of the terms of a security, such as how interest rates are to be calculated, and so on."

*Estate of Pew v. Cardarelli*, 527 F.3d 25, 33 (2d Cir. 2008) (internal quotation marks omitted).

WHEREFORE, Cantor hereby removes the above-captioned action from the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, and requests that all further proceedings be conducted in this Court as provided by law.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   /s/ Jane A. Robert
      Michael D. Hunt, Bar No. 7061
      Jane A. Robert, Bar No. 19123
      II City Plaza
      400 Convention Street • Suite 1100
      Baton Rouge, Louisiana 70802-5618
      P.O. Box 4412
      Baton Rouge, Louisiana 70821-4412
      Telephone: (225) 346-0285
      Telecopier: (225) 381-9197
      Email: huntm@phelps.com
            robertj@phelps.com

*Of counsel:*

**WILLIAMS & CONNOLLY LLP**
Dane H. Butswinkas
R. Hackney Wiegmann
Marcie R. Ziegler
James H. Weingarten
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
Email:  hwiegmann@wc.com
       mziegler@wc.com

*Attorneys for Cantor Fitzgerald & Co.*

Dated:  December 22, 2010

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Notice of Removal* and the exhibits thereto has been served via First Class, United States Mail, properly addressed and postage prepaid, this 22nd day of December, 2010, on:

Patrick N. Broyles, Esq.
MOORE, THOMPSON, LEE & BROYLES, APLC
6513 Perkins Road
Baton Rouge, LA 70808
*Attorney for Plaintiffs*

Frederick R. Tulley, Esq.
TAYLOR PORTER BROOKS & PHILLIPS, L.L.P.
8th Floor - Chase Tower South
451 Florida Street
Baton Rouge, LA 70801
*Attorney for Defendants Commonwealth, Walter Morales, Jennifer Morales,*
*James O'Beirne, Noel Caldwell, Willie Warrington, and the CA Funds*

Dane H. Butswinkas, Esq.
R. Hackney Wiegmann, Esq.
Marcie R. Ziegler, Esq.
James H. Weingarten, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
*Attorneys for Cantor Fitzgerald Securities; Cantor Fitzgerald, L.P.;*
*CF Group Management, Inc.; CFLP CFS I Holdings, L.P.;*
*CFS CF & Co. Holdings, LLC; CFS CF & Co. I Holdings, L.P.;*
*Thomas Joseph Anzalone; Douglas Rankin Barnard; Irvin Goldman;*
*Gina Hubbell; Edward LaScala; William Howard Lutnick;*
*Shawn Peter Matthews; Stephen M. Merkel; and Andrew Craig Wells*

/s/ Jane A. Robert
Jane A. Robert, Bar No. 19123