**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

JOSEPH N. BROYLES, *et al.*,

              Plaintiffs,

    v.

CANTOR FITZGERALD & CO., *et al.*,

              Defendants.

Civil Action No.  3:10-cv-00857-BAJ-DLD

**MEMORANDUM IN SUPPORT OF CANTOR FITZGERALD & CO.'S MOTION**
**TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6)**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

    A.    The CA Funds. .................................................................................................. 4

    B.    The Collybus Transactions. .............................................................................. 4

ARGUMENT ..................................................................................................................... 6

I.      THE COMPLAINT MUST BE DISMISSED UNDER SLUSA....................................... 6

    A.    SLUSA Precludes State Law Securities Class Actions Involving a Covered
        Security. ............................................................................................................ 7

    B.    SLUSA Requires Dismissal of the Complaint. ................................................ 9

        1.    Plaintiffs' Suit Is a "Covered Class Action." ...................................... 10

        2.    Plaintiffs' Claims Are Based on State Law. ........................................ 11

        3.    Plaintiffs' Claims Involve One or More Covered Securities. ............... 11

        4.    Plaintiffs Allege Misstatements and Omissions in Connection with the
            Purchase or Sale of a Covered Security. .............................................. 12

            a.    Alleged Misrepresentations that the CA Funds Would Purchase
                Covered Securities Satisfy SLUSA. .............................................. 13

            b.    Plaintiffs' Relationship with Commonwealth Necessarily
                Involved the Purchase and Sale of Securities. .............................. 15

            c.    The Allegations in a Related Complaint Confirm the Application
                of SLUSA in this Case. ................................................................. 16

                1)    This Court May Consider or Take Judicial Notice of
                      Allegations in a Related Complaint Without Converting
                      this Motion to One for Summary Judgment. .................... 17

                2)    The Related Complaint Confirms that Plaintiff Broyles
                      Sold Covered Securities Based on Alleged
                      Misrepresentations and Omissions. .................................. 18

                3)    The Related Complaint Confirms that Plaintiffs Allege
                      That Commonwealth Misrepresented that the CA Funds
                      Would Invest in Covered Securities. ................................ 19

            d.    The Allegations in the Complaint Regarding the Collybus
                  Transactions Satisfy SLUSA. ....................................................... 20

            e.    SLUSA Requires Dismissal of the Complaint Because All of
                 Plaintiffs' Claims Sound in Alleged Fraud. ................................. 22

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 2 of 59

II.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CANTOR BECAUSE
       PLAINTIFFS HAVE RELEASED CANTOR FROM LIABILITY. ............................... 23

       A.    The Parties Previously Settled Claims Arising from the Collybus
             Transaction. ................................................................................................. 23

       B.    The Court Should Consider the Settlement Agreement. ......................................... 24

       C.    The Release Precludes Plaintiffs from Pursuing Any Claims Against the
             Cantor Defendants. ................................................................................................. 25

III.   THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS FAIL
       TO ADEQUATELY PLEAD DEMAND FUTILITY .................................................. 28

       A.    Plaintiffs Have Not Adequately Pleaded Demand Futility Under Delaware
             Law. ................................................................................................. 29

       B.    Plaintiffs Lack Standing To Bring This Suit Under Cayman Islands Law. .......... 33

             1.    Plaintiffs Have Not Pleaded that a Special Majority Is Required To
                   Ratify the Alleged Conduct. .................................................................... 34

             2.    Plaintiffs Have Not Alleged Ultra Vires Conduct Within the Meaning of
                   English Common Law. .............................................................................. 35

             3.    Plaintiffs Have Not Adequately Pleaded a Fraud on the Minority. ......... 36

IV.    PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE
       GRANTED. .............................................................................................................. 38

       A.    The Pleading Requirements of *Twombly* and Rule 9(b). .................................... 38

       B.    Plaintiffs' Claims Are Subject to the Heightened Pleading Requirements of Rule
             9(b). ................................................................................................. 39

       C.    The Complaint Fails To Satisfy the Pleading Requirements of *Twombly* and
             Rule 9(b). ................................................................................................. 41

             1.    The Breach of Fiduciary Duty Claim Is Insufficient. .............................. 41

             2.    The Negligence Claims Are Insufficient. ................................................. 43

             3.    The Fraud Claims Are Insufficient. .......................................................... 44

             4.    The Breach of Contract Claim Is Insufficient. ......................................... 45

             5.    Any Conspiracy Claim Is Insufficient. .................................................... 46

CONCLUSION ..................................................................................................... 49

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336 (5th Cir. 2002) ..................................39

*Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968) ..................................................28

*Ackoff-Ortega v. Windswept Pacific Entm't Co.*, 120 F. Supp. 2d 273 (S.D.N.Y. 2000),
    *aff'd*, 46 F. App'x 663 (2d Cir. 2002)..........................................................................................28

*Aloe Creme Laboratories v. Francine Co.*, 425 F.2d 1296 (5th Cir. 1970) ..................................18

*Am. Tobacco Co. v. United States*, 328 U.S. 781 (1946)...............................................................48

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................2, 38

*Backus v. Conn. Community Bank, N.A.*, Civ. No. 3:09-CV-1256, 2009 WL 5184360 (D.
    Conn. Dec. 23, 2009) .................................................................................................................21

*Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 WL 882890 (S.D.N.Y. Mar. 10,
    2010) ..............................................................................................................................14, 19, 21

*Beary v. Nationwide Life Ins. Co.*, No. 2:06-CV-967, 2007 WL 4643323 (S.D. Ohio Sept.
    17, 2007) ....................................................................................................................................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................................3, 38, 47

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003) ................................40

*Berman v. Parco*, 986 F. Supp. 195 (S.D.N.Y. 1997) ..................................................................25

*Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Azioni*, 78 F.R.D. 1
    (S.D.N.Y. 1978).....................................................................................................................2, 27

*Bethea v. St. Paul Guardian Ins. Co.*, No. 02-1444, 2003 WL 21105099 (E.D. La. May
    12, 2003), *aff'd sub nom. Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul
    Guardian Ins. Co.*, 376 F.3d 399 (5th Cir. 2004) ...................................................................17

*Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733 (N.D. Tex. 2008) .....................................40

*Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587 (E.D. La. 1993) .................46, 48

*City of Chattanooga v. Hartford Life Ins. Co.*, No. 3:09cv516 (WWE), 2009 WL
    5184706 (D. Conn. Dec. 22, 2009)....................................................................................21, 22

*City of Harper Woods Employees' Ret. Sys. v. Olver*, 577 F. Supp. 2d 124 (D.D.C. 2008),
    *aff'd*, 589 F.3d 1292 (D.C. Cir. 2009) .......................................................................34, 35, 36

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 4 of 59

*Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178 (S.D.N.Y. 2008) ...............26

*Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-CV-02800, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010) ...............................................................................................................9

*Davis v. E. Baton Rouge Parish Sheriff's Office*, No. 08-708, 2010 WL 4962812 (M.D. La. Dec. 1, 2010).............................................................................................................38

*Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001) ......................33

*Dommert v. Raymond James Financial Services, Inc.,* No. CIV A. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ............................................................................15

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) .....................................................39

*DuFort v. Aetna Life Ins. Co.*, 818 F. Supp. 578 (S.D.N.Y. 1993).........................................25, 26

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007).....................................38

*Engel v. Sexton*, No. 06-10447, 2009 WL 361108 (E.D. La. Feb. 11, 2009) ...............................29

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *overruled in part on other grounds, Proctor v. Vishay Intertech Inc.*, 584 F.2d 1028 (9th Cir. 2009)........................14, 19

*FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008) .......................................46

*Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006) ..................9

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009) ......................................................................................................................................39

*Florida Bd. of Trs. of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700 (5th Cir. 1975) ..............................................................................................18

*G.F. Thomas Investments, L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673 (W.D. La. 2004), *aff'd*, 123 F. App'x 155 (5th Cir. 2005)..............................................................................1, 6

*Gerdes v. Estate of Cush*, 953 F.2d 201 (5th Cir. 1992)....................................................................42

*Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2003) ..............................................39

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992)...........................................................39

*Guste v. United States*, 656 F. Supp. 1310 (W.D. La. 1986) ........................................................17

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552 (5th Cir. 2002)............................39

*In re Beacon Assocs. Litig.*, __ F. Supp. 2d __, No. 09 Civ. 777 (LBS), 2010 WL 3895582 (S.D.N.Y. Oct. 5, 2010) ......................................................................................15

*In re CLK Energy Partners, LLC*, No. 09-50616, 2010 WL 1930065 (Bankr. W.D. La. May 12, 2010) ........................................................................................................39

*In re Enron Corp. Sec.*, 535 F.3d 325 (5th Cir. 2008) ..............................................7, 9

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 759 (S.D. Tex. 2007) ....................................................................................................................46

*In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006) ......................................................................................................................9

*In re Taxable Mun. Bond Secs. Litig.*, No. 863 (MDL), 1993 WL 591418 (E.D. La. Dec. 29, 1993) ...............................................................................................................43

*Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008)...................14, 19

*ITT Rayonier Inc. v. United States*, 651 F.2d 343 (5th Cir. 1981)...............................................18

*Jimenez v. JP Morgan Chase & Co.*, No. 08-CV-0152W (WMC), 2008 WL 2036896 (S.D. Cal. May 8, 2008) ......................................................................................25

*Junior Money Bags, Ltd. v. Segal*, 798 F. Supp. 375 (E.D. La. 1990)...........................................48

*Keith v. Stoelting, Inc.*, 915 F.2d 996 (5th Cir. 1990)....................................................................43

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002) ....................................................................................................................17

*Kiva Constr. & Eng'g v. Int'l Fid. Ins. Co.*, 749 F. Supp. 753 (W.D. La 1990) ...........................48

*Kurz v. Fidelity Mgmt. & Research Co.*, 07-CV-709-JPG, 2008 WL 2397582 (S.D. Ill. June 10, 2008), aff'd, 556 F.3d 639 (7th Cir. 2009) ..............................................9

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001)................................1, 6

*Lang v. DirecTV, Inc.*, __ F. Supp. 2d __, No. 10-1085, 2010 WL 3211081 (E.D. La. Aug. 13, 2010) ...............................................................................................40

*Lentz v. Trinchard*, __ F. Supp. 2d. __, No. 02-1235, 2010 WL 3070413 (E.D. La. Aug. 2, 2010) ..............................................................................................46, 47, 48

*Levinson v. PSCC Servs., Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009) ................................................................................................ passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................................48

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) .......................7, 8, 12

*Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698 (5th Cir. 2004) ...............................................8, 9

*Miller v. Nationwide Life Ins. Co.*, No. Civ. A. 03-1236, 2003 WL 22466236 (E.D. La. Oct. 29, 2003) ......................................................................................................................9, 22

*Montgomery v. Sears Roebuck & Co.*, No. 09-0584, 2010 WL 4781438 (W.D. La. Oct, 14, 2010) ......................................................................................................................25

*Nabors Drilling U.S.A. L.P. v. Twister Exploration, L.L.C.*, No. 01-2109, 2002 WL 287728 (E.D. La. Feb. 26, 2002) ....................................................................................17

*RBS Holdings, Inc. v. Wells Fargo Century, Inc*., 485 F. Supp. 2d 472 (S.D.N.Y. 2007) ...........24

*Red Rock Investments v. JAFCO Ltd., Inc.*, 79 F.3d 1146, 1996 WL 97549 (5th Cir. Feb. 16, 1996) ...............................................................................................................47, 48

*Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010) .......................................................................17

*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005) .......................................17

*Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977) ...................................................................2, 27

*Schnorr v. Schubert*
No. CIV-05-303-M, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) ..............................14, 19

*SEC v. Zandford*, 535 U.S. 813 (2002) ......................................................................................12

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3326 (2010) ....................................................................................................................8

*Seghers v. Thompson*, No. 06CIV308RMBKNF, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006) ......................................................................................................................34

*Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP, 2006 WL 3408043 (S.D. Fla. May 10, 2006) ...................................................................................................9, 18

*Stoody-Broser v. Bank of America, N.A.*, No. C 08-02705 JSW, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) ...........................................................................................................9

*Sw. La. Healthcare Sys. v. MBIA Ins. Corp.*, No. 05-1299, 2007 WL 979933 (W.D. La. Mar. 29, 2007) ......................................................................................................................48

*Thurman v. City of Lake St. Louis*, 24 F.3d 1034 (8th Cir. 1994) ............................................2, 27

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ...............................................39

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ..........................................46, 47

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899 (5th Cir. 1997) .........39

*Unimobil 84, Inc. v. Spurney*, 797 F.2d 214 (5th Cir. 1986) ...................................................40, 44

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 7 of 59

*Williams v. WMX Techs, Inc.*, 112 F.3d 175 (5th Cir. 1997), *cert. denied*, 130 S. Ct. 199 (2009)........................................................................................................39, 40, 43

*Winn v. Schafer*, 499 F. Supp. 2d 390 (S.D.N.Y. 2007) ......................................33, 34, 36

**STATE CASES**

*Aranyosi v. Delchamps, Inc.*, 739 So. 2d 911 (La. Ct. App. 1999), *writ denied*, 750 So. 2d 187 (La. 1999)........................................................................................................46

*Aronson v. Lewis*, 473 A.2d 805, 814 (Del.1984) ..........................................................30, 31, 32

*Barnett v. Bd. of Trs. for State Colls. & Univs.*, 809 So. 2d 184 (La. Ct. App. 2001)...................45

*Beckstrom v. Parnell*, 730 So. 2d 942 (La. Ct, App. 998) ..............................................42

*Booth v. 3669 Delaware, Inc.*, 703 N.E.2d 757 (N.Y.1998)...........................................26

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...................................................................30, 32

*Busby v. Parish Nat'l Bank*, 464 So. 2d 374 (La. Ct. App. 1985) ..................................44

*Butz v. Lynch*, 710 So. 2d 1171 (La. Ct. App. 1998), *writ denied*, 721 So. 2d 473 (La. 1998)..............................................................................................................46

*Cotonio v. Richardson*, 9 Teiss. 242, 1912 WL 1765 (La. Ct. App. 1912) ....................48

*Denburg v. Parker Chapin Flattau & Klimpl,* 624 N.E.2d 995 (N.Y. 1993) .................26

*Devore v. Hobart Mfg. Co.,* 367 So. 2d 836 (La. 1979) .................................................44

*Golding v. Weissman*, 316 N.Y.S.2d 522 (App. Div. 1970)...........................................27

*Hall v. Lilly*, 697 So. 2d 676 (La. Ct. App. 1997)..........................................................48

*Hicks v. Wright*, 564 S.W.2d 785 (Tex. Civ. App. 1978) ..............................................28

*In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009) ............33

*Lewis v. Daum*, 9 Del. J. Corp. L. 481, 485, 1984 WL 8223 (Del. Ch. May 29, 1984) ..............32

*Levine v. Smith*, 591 A.2d 194, 205-06 (Del. 1991) ......................................................30

*Mangini v. McClurg*, 249 N.E.2d 386 (N.Y. 1969).......................................................26

*Mendelson Bros. Factors v. Sachs*, 1 N.Y.S.2d 838 (App. Div. 1938), *aff'd*, 17 N.E.2d 459 (N.Y. 1938) .........................................................................................................27

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 8 of 59

*Plaquemines Parish Comm'n Council v. Delta Development Co.*, 502 So. 2d 1034 (La. 1987) ...................................................................................................................42

*Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984) .......................................................32

*Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641 (La. 2007) .....................................42

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995)...................................................31

*Sevarg Co., Inc. v. Energy Drilling Co.*, 591 So. 2d 1278 (La. Ct. App. 1991).....................45, 46

*Skluth v. United Merchs. & Mfrs, Inc*., 559 N.Y.S.2d 280 (App. Div. 1990)...............................26

*Thomas v. North 40 Land Dev., Inc*., 894 So. 2d 1160 (La. Ct. App. 2005) ..........................47, 48

*Wadsworth v. ABC Ins. Co.,* 732 So. 2d 56 (La. Ct. App. 1998), *writ denied*, 742 So. 2d 558 (La. 1999).......................................................................................................42

*Walker v. Am. Honda Motor Co., Inc*., 640 So. 2d 794 (La. Ct. App. 1994) ...............................48

## OTHER AUTHORITIES

15 U.S.C. § 77r ....................................................................................................11, 14, 18

15 U.S.C. § 78bb ......................................................................................................8, 10, 11

Welch, Turezyn, & Saunders, *Folk on the Delaware General Corporation Law: Fundamentals* § 327.4.2.1, at 961 (2011 ed.) ...................................................................30, 32

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 9 of 59

Defendant Cantor Fitzgerald & Co. ("Cantor"), through undersigned counsel, respectfully submits this memorandum in support of its motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## <u>INTRODUCTION</u>

The Complaint alleges a putative state-law class action and derivative action against Cantor and numerous other defendants for alleged securities fraud. The Complaint fails as a matter of law and must be dismissed for four critical reasons.

*First*, the Securities Litigation Uniform Standards Act ("SLUSA") mandates dismissal of the Complaint. SLUSA was enacted to ensure compliance with the Private Securities Litigation Reform Act ("PSLRA"), which contains strict pleading requirements for federal securities actions and other limitations on federal securities claims. SLUSA enforces the dictates of the PSLRA by requiring the dismissal of a putative class action brought under state law that involves alleged fraud in connection with a security covered by the federal securities laws. Because SLUSA applies to Plaintiffs' class action Complaint—which alleges a misrepresentation or omission in connection with a covered security—the Complaint must be dismissed in its entirety. *See G.F. Thomas Investments, L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 685 (W.D. La. 2004) ("Once it is established that SLUSA governs the suit . . . the suit must be dismissed."), *aff'd*, 123 F. App'x 155 (5th Cir. 2005); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 110 (2d Cir. 2001) ("[T]he text of SLUSA calls for dismissal. . . . .").

*Second*, the Court should dismiss all of Plaintiffs' claims against Cantor with prejudice because Plaintiffs seek to bring this action in their capacity as shareholders of investment funds (the CA Funds) that have released all claims against Cantor. In January 2009, the CA Funds and Cantor agreed to "resolve and settle all claims, issues and disputes between them." Ex. 2 (Settlement Agreement) at 2. As part of the agreement, the CA Funds agreed to release Cantor

(as well as, *inter alia*, its affiliates, employees, and officers) from "all claims and causes of action," *id*. at 7, including those arising out of the transactions at issue in this case. A release by a corporation binds its shareholders and precludes them from bringing a derivative action. *See, e.g., Thurman v. City of Lake St. Louis*, 24 F.3d 1034, 1036 (8th Cir. 1994); *Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977); *Bernstein v. Mediobanca Banca di Credito Finanziario-Societa per Azioni*, 78 F.R.D. 1, 5 (S.D.N.Y. 1978). Accordingly, Plaintiffs' derivative action against Cantor is barred as a matter of law, and Plaintiffs' claims against Cantor should be dismissed with prejudice.[1]

*Third*, Plaintiffs lack standing to sue Cantor derivatively on behalf of the CA Funds. A putative derivative plaintiff may bring suit only if the managers of the company wrongfully have refused a demand that they initiate suit or demand is excused as futile. Plaintiffs do not allege that they have made a demand on the managers of the CA Funds that they initiate suit against Cantor. Nor does the Complaint sufficiently allege that any such demand would have been futile. Plaintiffs therefore lack standing to bring a derivative action against Cantor in the name of the CA Funds.

*Fourth*, the Complaint fails to assert a cognizable claim against Cantor. Plaintiffs fail to allege essential elements of several claims and fail to allege specific facts to support their conclusory allegations against Cantor. The Complaint also fails to satisfy the heightened pleading requirements under Fed. R. Civ. P. 9(b) for claims based on alleged fraud. Because Plaintiffs fail to "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S.

---

[1] To the extent Plaintiffs seek to assert direct rather than derivative claims against Cantor, Plaintiffs lack standing to do so for the reasons set forth in Cantor's memorandum in support of its Motion To Dismiss in *Broyles v. Cantor Fitzgerald & Co. et al.*, No. 10-cv-854-BAJ-SCR (M.D. La.), a companion class action before the Court.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), all of their claims against Cantor must be dismissed.[2]

## BACKGROUND

The Complaint seeks to assert derivative claims by Plaintiffs in their capacity as shareholders/members of the CA Funds.[3]  In the alternative, Plaintiffs seek to represent a putative class consisting of investors in the CA Funds who have suffered alleged losses as a result of their investment in the CA Funds.  Compl. ¶ 25.[4]

The Complaint names numerous defendants, including Commonwealth Advisors, Inc. ("Commonwealth"), which allegedly "created and controlled" the CA Funds, Compl. ¶ 2, and Cantor, which allegedly "created, underwr[ote] and sold" a security known as Collybus that was purchased by the CA Funds.[5]  Plaintiffs allege violations of Louisiana state law and seek to enforce the CA Funds' rights arising from alleged "misrepresentations, misstatements and omissions of material fact made to the CA Funds" in connection with the sale of Collybus and other securities to the CA Funds.  Compl. ¶ 1; *see also* Compl. ¶ 36.

---

[2] Cantor also reserves the right to move to transfer this action pursuant to a forum selection clause between Cantor and the CA Funds that encompasses this case.  Because this action should be dismissed with prejudice for the reasons set forth herein, Cantor will defer any such motion to avoid unnecessarily burdening the Court.

[3] The CA Funds are the CA High Yield Fund, LLC; CA High Yield Offshore Fund, Ltd.; CA Core Fixed Income Fund, LLC; CA Core Fixed Income Offshore Fund, Ltd.; CA Strategic Equity Fund, LLC; and CA Strategic Equity Offshore Fund, Ltd.

[4] Cantor removed the Complaint to this Court from Louisiana state court.  Joseph N. Broyles, the lead Plaintiff, also has filed a putative class action involving the same underlying events that Cantor has removed to this Court: *Broyles v. Cantor Fitzgerald & Co. et al.*, No. 10-cv-854-BAJ-SCR (M.D. La.).

[5] The Defendants also include Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., CF Group Management, Inc., CFLP CFS I Holdings, L.P., CFS CF & Co Holdings, LLC, CFS CF & Co. I Holdings, L.P., and various current and former employees of Cantor (Thomas Joseph Anzalone, Douglas Rankin Barnard, Irvin Goldman, Gina Hubbell, Edward LaScala, William Howard Lutnick, Shawn Peter Matthews, Stephen M. Merkel, and Andrew Craig Wells) (collectively, with Cantor, the "Cantor Defendants").  The Cantor Defendants (other than Cantor) have filed a separate motion to dismiss on personal jurisdiction and other grounds.  Also named as Defendants are various employees of Commonwealth, including Walter A. Morales III, Jennifer O. Morales, James F. O'Beirne, Noel Caldwell, and Willie Gerald Warrington, Jr. (collectively, the "Commonwealth Defendants").  In addition, the CA Funds are named as nominal defendants.

3

## A.    The CA Funds.

The Complaint alleges that the CA Funds were "pooled asset" hedge funds created and controlled by Commonwealth through Walter Morales, an investment advisor and the president of Commonwealth.  Compl. ¶ 2.  According to Plaintiffs, in 2006 Commonwealth and Morales recommended to Plaintiffs and other Commonwealth clients that they "pool" their investments together to obtain better collective buying power and earn a better return on their investments "without changing the Investors' individual investment strategies."  Compl. ¶ 37. Commonwealth allegedly "began liquidating Investors' investment assets and using the cash to purchase interests in one or more" of the CA Funds.  Compl. ¶ 38.  The CA Funds used the cash received from the Investors "to purchase securities."  Compl. ¶ 39.

 The Complaint alleges that "[e]ach of the CA Funds was supposed to have a different investment strategy and, thus, different holdings, as represented by Commonwealth and as indicated by the names of the various CA Funds, *i.e.*, high yield, fixed income, equities." Compl. ¶ 40.  Plaintiffs allege, however, that "there is no diversification between the funds." Compl. ¶ 40.  Rather, according to the Complaint, "each of the CA Funds have [sic] owned the same, illiquid asset since at least June of 2008:  the A-2 tranche of Collybus."  Compl. ¶ 40.

The Complaint alleges that the holdings of the CA Funds included residential mortgage backed securities, collateralized debt obligations, and credit default swaps all tied to the performance of the U.S. housing market (the "Troubled Assets").  Compl. ¶¶ 43-44.  In addition, in or about 2007, the CA Funds allegedly held "a substantial amount of liquid, marketable assets."  Compl. ¶ 44.

## B.    The Collybus Transactions.

The Complaint alleges that, in 2007, Commonwealth formed and executed a plan to remove Troubled Assets from the CA Funds' books by using the Troubled Assets as collateral

for a new security and then buying portions of that new security. Compl. ¶¶ 48-50. The CA Funds would transfer their Troubled Assets to the new security and would receive back one or more sections, or tranches, of the newly formed security. Compl. ¶ 50.

The Complaint alleges that Commonwealth retained Cantor to underwrite the new security and permit Commonwealth to be in charge of selecting and managing the assets that would go into the new security. Compl. ¶¶ 51-52. The new security involved creation of two new entities: Collybus CDO I Ltd. and Collybus CDO I Corp. (together, "Collybus"). Compl. ¶ 52. Commonwealth allegedly agreed to transfer assets from the CA Funds, including the Troubled Assets, to Cantor for inclusion in Collybus and agreed to purchase the Collybus C & D tranches. Compl. ¶¶ 53-54. Plaintiffs refer to these actions as "the 2007 Collybus deal." Compl. ¶ 55.

As part of the 2007 Collybus deal, Commonwealth and Cantor allegedly entered into a master repurchase agreement in March 2007.[6] Plaintiffs allege that the purpose of this agreement was to allow Commonwealth to purchase one or more tranches of Collybus using leverage. Compl. ¶ 56. Plaintiffs allege that various of the CA Funds paid millions of dollars each for tranches of Collybus. Compl. ¶ 60. According to Plaintiffs, the C, D, and equity tranches presently are worthless. Compl. ¶ 62.

The Complaint alleges that, on June 4, 2008, Cantor and Commonwealth entered into an agreement for the sale of the A-2 tranche of Collybus. Compl. ¶ 75. Plaintiffs refer to this transaction as the "June 2008 Collybus Deal." Compl. ¶ 76. Plaintiffs allege that "many of the CA Funds' assets that were sold as part of the purchase of the Collybus A-2 tranche were marketable and capable of liquidation for substantial value." Compl. ¶ 80.

---

[6] This allegation is erroneous. There was no repurchase agreement with respect to the November 2007 Collybus transaction.

Case 3:10-cv-00857-JJB -SCR   Document 13-1    01/19/11   Page 14 of 59

Plaintiffs further allege that Cantor financed Commonwealth's purchase of the A-2 tranche using a repurchase agreement. Compl. ¶ 82. The Complaint alleges that, after the June 2008 Collybus deal, "the CA Funds all held the same, single, illiquid asset: the A-2 tranche of Collybus." Compl. ¶ 83. Plaintiffs allege that the A-2 tranche remains illiquid at this time. Compl. ¶ 85. The CA Funds and other Commonwealth funds allegedly paid Cantor approximately $300 million for the Collybus A-2 tranche. Compl. ¶ 86.

Plaintiffs allege that Defendants engaged in

> tortious acts involving the creation, structuring, management, offering, placement, sale, valuation of, and other transactions relating to Collybus and other securities, self-dealing by and between defendants, breach of contract, breach of fiduciary duty, mismanagement of the CA Funds' assets, conversion of the CA Funds' assets, misrepresentations, misstatements and omission of material fact made to the CA Funds in connection with the sale of Collybus and/or other security-related transactions, and other violations of Louisiana law.

Compl. ¶ 1. The Complaint alleges that Defendants' conduct has caused the CA Funds "to sustain hundreds of millions of dollars in losses." Compl. ¶ 1.

## ARGUMENT

## I. THE COMPLAINT MUST BE DISMISSED UNDER SLUSA.

SLUSA mandates dismissal of Plaintiffs' entire Complaint. *See G.F. Thomas Investments, L.P. v. Cleco Corp.*, 317 F. Supp. 2d 673, 685 (W.D. La. 2004) ("Once it is established that SLUSA governs the suit . . . the suit must be dismissed."), *aff'd*, 123 F. App'x 155 (5th Cir. 2005); *see also Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 110 (2d Cir. 2001) ("[T]he text of SLUSA calls for dismissal. . . .").

## A.     SLUSA Precludes State Law Securities Class Actions Involving a Covered Security.

SLUSA was enacted "'to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives'" of federal law limiting securities class actions.  *In re Enron Corp. Sec.*, 535 F.3d 325, 338 (5th Cir. 2008) (quoting *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006)).  As the Fifth Circuit and Supreme Court have explained, the purpose of SLUSA is to preclude plaintiffs from attempting to end-run the strictures of the PSLRA by bringing a securities class action alleging violations of state law:

> In response to . . . "perceived abuses of the class-action vehicle in litigation involving nationally traded securities," Congress enacted the [PSLRA] in 1995 to eliminate the "ways in which the class action device was being used to injure the entire U.S. economy." Under the PSLRA, plaintiffs in federal securities cases face:  limits on damages and on attorneys' fees; a safe harbor provision for forward-looking statements; restrictions on the selection of (and compensation awarded to) lead plaintiffs; sanctions for frivolous litigation; a mandatory discovery stay pending resolution of any motion to dismiss; and heightened pleading requirements.  The PSLRA, however, produced an unintended consequence; rather than confronting the restrictive conditions set forth by the PSLRA, plaintiffs began filing class-action securities lawsuits under state law, often in state court.  *To stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], Congress enacted SLUSA."*

*Enron*, 535 F.3d at 337 (emphasis added) (citing and quoting *Dabit*, 547 U.S. at 81-82).

"Congress . . . has indicated that the federal courts should interpret SLUSA broadly to achieve these goals . . . 'to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.'"  *Id.* at 338 (emphasis omitted) (quoting S. Rep. No. 105-182, 1998 WL 226714, at *8 (1998)); *see also Dabit*, 547 U.S. at 86 (observing that "Congress envisioned a broad construction" of SLUSA and that "[a] narrow reading . . . would

undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose"); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) ("[W]e have previously recognized that SLUSA was designed to ensure that all causes of action involving allegations of misrepresentation or omission in connection with covered securities would be subject to the requirements of the [PSLRA].").  Courts must look to the substance of a complaint's allegations in applying SLUSA to prevent a plaintiff from eluding SLUSA through artful pleading.  *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3326 (2010).

SLUSA requires the dismissal of any covered state law securities class action involving an alleged misrepresentation or omission in connection with the purchase or sale of a covered security.  The statute provides, in relevant part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

SLUSA does not preclude a plaintiff from filing an individual securities fraud complaint in either federal or state court; nor does it preclude a plaintiff from filing a class action in federal court under the federal securities laws.  *See Dabit*, 547 U.S. at 87.  But SLUSA does prohibit cases like this one, in which Plaintiffs attempt to evade the stringent requirements governing federal securities actions by filing a class action complaint that purports to allege state law violations arising from alleged misrepresentations and omissions in connection with a covered security.  When a plaintiff's "claim is a securities fraud wolf dressed up in [state law] sheep's

clothing," the complaint must be dismissed. *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006). Indeed, federal courts routinely dismiss complaints pursuant to SLUSA. *See, e.g., Daniels v. Morgan Asset Mgmt., Inc.*, No. 09-CV-02800, 2010 WL 4024604, at *12 (W.D. Tenn. Sept. 30, 2010) (dismissing complaint pursuant to SLUSA); *Stoody-Broser v. Bank of America, N.A.*, No. C 08-02705 JSW, 2009 WL 2707393, at *2-5 (N.D. Cal. Aug. 25, 2009) (dismissing under SLUSA complaint alleging breach of fiduciary duty and self-dealing); *Kurz v. Fidelity Mgmt. & Research Co.*, 07-CV-709-JPG, 2008 WL 2397582, at *5 (S.D. Ill. June 10, 2008) (dismissing complaint pursuant to SLUSA), aff'd, 556 F.3d 639 (7th Cir. 2009); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (dismissing with prejudice state law breach of fiduciary duty claims and finding plaintiffs' attempt to evade SLUSA preemption unavailing); *Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP, 2006 WL 3408043, at *2-7 (S.D. Fla. May 10, 2006) (dismissing under SLUSA claims for breach of fiduciary duty); *Miller v. Nationwide Life Ins. Co.*, No. 03-1236, 2003 WL 22466236, at *6 (E.D. La. Oct. 29, 2003) (dismissing claim pursuant to SLUSA where "the issue is not, in fact, a garden variety contract claim, but a claim based on misrepresentations and omissions"), *aff'd*, 391 F.3d 698 (5th Cir. 2004).

    **B.    SLUSA Requires Dismissal of the Complaint.**

    "SLUSA preempts a securities class action if four conditions are satisfied: (1) the action is a 'covered class action'; (2) the claims are based on state law; (3) the action involves one or more 'covered securities'; and (4) the claims allege a misrepresentation or omission of material fact 'in connection with the purchase or sale' of a covered security." *Enron*, 535 F.3d at 338-39 (citation omitted). Plaintiffs' putative class action Complaint meets all of these requirements.

### 1. Plaintiffs' Suit Is a "Covered Class Action."

The instant action is a "covered class action" under SLUSA.[7]  Plaintiffs seek damages on behalf of more than 50 prospective class members and allege that questions of law or fact common to members of the prospective class predominate over any questions affecting only individual members.

Although the Complaint nominally is styled as a derivative suit, the Complaint also alleges that the suit may "be certified as a class action under La. C.C.P. art. 613."  Compl. ¶ 16.  The Complaint alleges that "this action may properly be maintained as a class action pursuant to the provisions of La. C.C.P. art. 591 and 611 et seq.," Compl. ¶ 35, and that, to the extent the action is maintained as a class action, "plaintiffs respectfully request that they be permitted to proceed as representatives of, and on behalf of, . . . putative Class members."  Compl. ¶ 25.  The Complaint alleges that the total number of class members will "be around 100 persons, and potentially less than 100."  Compl. ¶ 16.  The Complaint also contains numerous class allegations.  Compl. ¶¶ 26-35.  Further, the Complaint alleges that "common questions of Louisiana law and fact exist as to the CA Funds and all members of the Class and predominate over any questions affecting only individual members of the Class" and lists eight such "common legal and factual questions."  Compl. ¶ 28(a)-(h).

_____

[7] Under SLUSA, a covered class action is any suit in which:

> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 78bb(f)(5)(B)(i).

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 19 of 59

Despite Plaintiffs' attempt to evade SLUSA by styling this action in part as a derivative suit, SLUSA applies. Although an "exclusively derivative action brought by one or more shareholders on behalf of a corporation," 15 U.S.C. § 78bb(f)(5)(C), is not a covered class action, Plaintiffs' Complaint does not allege an exclusively derivative action, as it also alleges a putative class action. Nor is this putative derivative action brought by one or more shareholders on behalf of a corporation. None of the CA Funds is a corporation. *See* Compl. ¶ 7 (alleging that CA funds are limited liability companies or Cayman Islands exempted companies). The Complaint alleges a covered class action under SLUSA.

### 2. Plaintiffs' Claims Are Based on State Law.

SLUSA applies to covered class actions that are "based upon the statutory or common law of any State." 15 U.S.C. § 78bb(f)(1). This requirement also is satisfied. Plaintiffs allege that they assert claims "solely under Louisiana law." Compl. ¶ 15.

### 3. Plaintiffs' Claims Involve One or More Covered Securities.

The Complaint satisfies the third requirement for dismissal under SLUSA because the alleged conduct involves one or more "covered securities." A "covered security" includes, *inter alia*, one that is "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market" or a "security of the same issuer that is equal in seniority or that is a senior security to a security described" above. 15 U.S.C. § 77r(b)(1)(A) & (C) (cross-referenced in 15 U.S.C. § 78bb(f)(5)(E)).

According to the Complaint, this suit is brought:

> to enforce all rights and actions of the CA Funds against the named defendants in connection with the sale of Collybus CDO I Ltd. and/or Collybus CDO I Corp. ("Collybus") . . . as well as defendants' tortious acts involving the creation, structuring, management, offering, placement, sale, valuation of, and other

transactions relating to Collybus *and other securities*, self-dealing by and between the defendants, breach of contract, breach of fiduciary duty, mismanagement of the CA Funds' assets, conversion of the CA Funds' assets, misrepresentations, misstatements and omissions of material fact made to the CA Funds in connection with the sale of Collybus *and/or other security-related transactions*, and other violations of Louisiana law.

Compl. ¶ 1 (emphases added). Although the Collybus securities themselves are not "covered securities," Plaintiffs' allegations do concern covered securities, as discussed below.

### 4. Plaintiffs Allege Misstatements and Omissions in Connection with the Purchase or Sale of a Covered Security.

The Complaint satisfies the fourth requirement for dismissal under SLUSA, as it alleges misrepresentations or omissions of material fact "in connection with" the purchase or sale of a covered security.

The Supreme Court has defined "in connection with" very broadly to encompass circumstances where "the scheme to defraud and the sale of securities coincide." *SEC v. Zandford*, 535 U.S. 813, 822-23 (2002) (quotations omitted). In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), the Supreme Court applied this definition of "in connection with" to SLUSA, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Id*. at 85 (quotations omitted).

The Complaint alleges "misrepresentations, misstatements and omissions of material fact made to the CA Funds in connection with the sale of Collybus and/or other security-related transactions." Compl. ¶ 1. The misrepresentations and omissions of material fact alleged in the Complaint were made "in connection with" one or more covered securities. In addition, allegations in the related complaint filed by Plaintiff Broyles confirm that SLUSA applies here.

### a. Alleged Misrepresentations that the CA Funds Would Purchase Covered Securities Satisfy SLUSA.

The Complaint alleges that Plaintiffs were induced to invest in the CA Funds by misrepresentations that the CA Funds would invest in covered securities. This is sufficient for SLUSA to apply.

The Complaint alleges that Commonwealth misrepresented that the CA Funds would invest in covered securities. Specifically, the Complaint alleges that Defendants Commonwealth and Morales recommended that Plaintiffs enter into pooled-asset hedge funds (the CA Funds) that would allow "a better return on their investments *without changing the Investors' individual investment strategies*." Compl. ¶ 37 (emphasis added). The Complaint also alleges that Plaintiffs contributed funds "saved for retirement purposes" in order to invest in the CA Funds, Compl. ¶ 39, and that "[e]ach of the CA funds was supposed to have a different investment strategy and, thus, different holdings, as represented by Commonwealth and as indicated by the names of the various CA Funds, i.e., *high-yield, fixed income, equities*. In short, there was supposed to be diversification among the funds," Compl. ¶ 40 (emphasis added). The Complaint further alleges that, contrary to representations made by Defendants Commonwealth and Morales, "it has been discovered that there "is no diversification between the funds. Rather, each of the CA Funds have owned the same, illiquid asset since at least June of 2008: the A-2 tranche of Collybus." Compl. ¶ 40.

The equity securities in which the CA Strategic Equity Fund allegedly was supposed to invest would be covered securities because they would be listed on national exchanges. Similarly, to the extent that the CA High Yield Fund and CA Core Fixed Income Fund allegedly were to invest in high-yield and fixed income securities issued by corporations, those securities

would be covered securities because they would be senior securities to the corporate issuer's equity securities listed on a national exchange.  *See* 15 U.S.C. § 77r(b)(1)(A)-(C).

Plaintiffs' allegation that they were misled into believing that the CA Funds would invest in covered securities is sufficient for the application of SLUSA.  Importantly, "it is not necessary that the purchase or sale actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit." *Barron v. Igolnikov*, No. 09 Civ. 4471 (TPG), 2010 WL 882890, at *4 (S.D.N.Y. Mar. 10, 2010); *see, e.g.*, *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (SLUSA precluded action to hold defendant liable for fraud where third-party investment manager stole investors' money rather than purchasing securities); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129–30 (9th Cir. 2002) (SLUSA preempted class action relating to unexercised stock options because "if a person contracts to sell a security, that contract is a 'sale' even if the sale is never consummated"), *overruled in part on other grounds*, *Proctor v. Vishay Intertech Inc.*, 584 F.2d 1028, 1219 (9th Cir. 2009)).  In particular, courts have held that SLUSA precludes claims against investment managers who promised to invest plaintiffs' funds in covered securities, but never actually did so.  *See, e.g.*, *Barron*, 2010 WL 882890; *Levinson v. PSCC Servs., Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363, at *11-12 (D. Conn. Dec. 23, 2009); *Schnorr v. Schubert*, No. CIV-05-303-M, 2005 WL 2019878, at *5 (W.D. Okla. Aug. 18, 2005).  Indeed, the *Barron* court held that it was sufficient that an alleged fraudulent scheme was in connection with "*claimed*" trading in national securities and that it was "not essential" that anyone "actually performed any trades or acquired any securities."  2010 WL 882890, at *5 (emphasis added).

Similarly, at least one federal court has rejected outright the argument that SLUSA was inapplicable because the alleged misrepresentations "were made in connection with LLC

interests, which they assert are not 'covered securities.'" *In re Beacon Assocs. Litig.*, __ F. Supp. 2d __, No. 09 Civ. 777 (LBS), 2010 WL 3895582, at *33 (S.D.N.Y. Oct. 5, 2010). Although the LLC interests were not themselves covered securities, the court applied SLUSA and dismissed the claims because the alleged investment strategy the LLCs were to pursue included the purchase and sale of covered securities. *See id.* at *34. Accordingly, the allegation in the Complaint that Plaintiffs were misled concerning the holdings and alleged diversification of the CA Funds is sufficient for SLUSA to apply.

### b. Plaintiffs' Relationship with Commonwealth Necessarily Involved the Purchase and Sale of Securities.

The relationship between Plaintiffs and Commonwealth alleged in the Complaint necessarily involved the purchase and sale of securities. For this reason as well, SLUSA applies.

Courts have held that the "in connection with" requirement is satisfied when the nature of the parties' relationship necessarily involves the purchase and sale of securities. *See Levinson*, 2009 WL 5184363, at *11. For example, in *Dommert v. Raymond James Financial Services, Inc.,* No. CIV A. 1:06-CV-102, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007), the court held that SLUSA preempted investors' breach of contract and breach of fiduciary duty claims based on a financial investment services firm's nondisclosure of material information about the terms of its investment agreements. The *Dommert* court held that SLUSA applied, among other reasons, because the purpose of the investment agreements was to "utilize [the plaintiff's] assets and expand upon those assets, presumably with the purchase and sale of securities." *Id.* at *11. Moreover, the investment agreement "was formed and the fiduciary relationship was created because Plaintiff contracted with Defendant for the management of her assets, which encompassed the purchase and sale of stock." *Id.*

15

Here, according to the Complaint, Commonwealth is "a registered investment advisor." Compl. ¶ 8(q). Commonwealth and Morales allegedly acted "as financial advisor" to Plaintiffs, "owing all of the fiduciary and other duties commensurate with such a position." Compl. ¶ 37. The Complaint alleges that Commonwealth created the CA Funds as "'pooled asset' hedge funds," Compl. ¶ 2, and advised Plaintiffs that the Funds would allow them to "'pool' their investment assets together in order to obtain . . . a better return on their investments without changing the Investors' individual investment strategies," Compl. ¶ 37. The CA Funds allegedly were "created and managed exclusively by Commonwealth." Compl. ¶ 38. "The Investors' cash was used by the CA Funds, through Commonwealth, to purchase securities." Compl. ¶ 39. "Each of the CA Funds was supposed to have a different investment strategy and, thus, different holdings, as represented by Commonwealth and as indicated by the names of the various CA Funds, i.e., high yield, fixed income, equities." Compl. ¶ 40. The Complaint alleges that Plaintiffs were misled about the true nature of the CA Funds and their holdings. Compl. ¶ 40.

As the Complaint acknowledges, "[a]s hedge funds, the CA Funds bought and sold securities." Compl. ¶ 41. Thus, there can be no doubt that the relationship between Plaintiffs and Commonwealth necessarily involved the purchase and sale of covered securities. Because Plaintiffs allege that they were misled by their investment advisor concerning their investment in the CA Funds, SLUSA applies and the Complaint should be dismissed.

> ### c.     The Allegations in a Related Complaint Confirm the Application of SLUSA in this Case.

In addition to the Complaint in this case, lead Plaintiff Joseph N. Broyles has made related allegations in a second putative class action complaint that Cantor has removed to this Court, *Broyles v. Cantor Fitzgerald & Co. et al.*, No. 10-cv-854-BAJ-SCR (M.D. La.) (the "Companion Class Action"). The Companion Class Action Complaint makes clear that Plaintiff

Broyles alleges that he sold covered securities in reliance on alleged misrepresentations and omissions concerning the CA Funds. The underlying allegations of the two complaints are essentially the same. Despite Plaintiffs' artful pleading in the Complaint, the allegations in the Companion Class Action Complaint confirm that SLUSA applies to this case.

**1)**      **This Court May Consider or Take Judicial Notice of Allegations in a Related Complaint Without Converting this Motion to One for Summary Judgment.**

Courts are permitted to consider extrinsic evidence when evaluating the application of SLUSA. *See, e.g.*, *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) ("[W]e are free to look beyond the face of the amended complaints to determine whether they allege securities fraud in connection with the purchase or sale of covered securities."); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("No matter how an action is pleaded, if it is a covered class action involving a covered security, removal is proper.") (quotations and alterations omitted); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 999 (C.D. Cal. 2002) (considering declarations in determining application of SLUSA and granting motion to dismiss).

Even if this case did not involve SLUSA, the Court "may take into account matters of public record, orders, items appearing on the record of the case and exhibits attached to the complaint" without converting this Motion to one for summary judgment. *Bethea v. St. Paul Guardian Ins. Co.*, No. 02-1444, 2003 WL 21105099, at *3 (E.D. La. May 12, 2003), *aff'd sub nom. Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399 (5th Cir. 2004); *Nabors Drilling U.S.A. L.P. v. Twister Exploration, L.L.C.*, No. 01-2109, 2002 WL 287728, at *1 (E.D. La. Feb. 26, 2002); *see also Guste v. United States*, 656 F. Supp. 1310, 1314 n.6 (W.D. La. 1986) ("introduction of matters of public record" permissible in Rule 12(b) motion), *aff'd* 832 F.2d 935 (5th Cir. 1987).

Specifically, "[a] court may . . . take judicial notice of its own records or of those of inferior courts." *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981). "It is not error . . . for a court to take judicial notice of related proceedings and records in cases before that court." *Florida Bd. of Trs. of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975); *see also Aloe Creme Laboratories v. Francine Co.*, 425 F.2d 1296 (5th Cir. 1970) (per curiam) ("The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time."). The Companion Class Action Complaint is attached hereto as Exhibit 1.

### 2) The Related Complaint Confirms that Plaintiff Broyles Sold Covered Securities Based on Alleged Misrepresentations and Omissions.

The Companion Class Action Complaint confirms that Plaintiff Broyles alleges that he sold covered securities in reliance on alleged misrepresentations concerning the CA Funds. It alleges that Broyles' original investment account with Commonwealth was comprised of "stocks, bonds, mutual funds, asset-backed securities, and money markets." Ex. 1 ¶ 21. It also alleges that, prior to his investment in the CA Funds, Broyles "owned numerous shares in various, publically-traded stocks, bonds, and mutual funds." Ex. 1 ¶ 25. Plaintiff Broyles alleges that he was induced to sell those holdings in reliance on misstatements and omissions by Commonwealth. Ex. 1 ¶ 22. The assets that Plaintiff Broyles allegedly sold to invest in the CA Funds are covered securities under SLUSA. *See* 15 U.S.C. § 77r(b)(1)(A)-(B) (defining covered securities to include securities listed for trading on national stock exchanges and corporate bonds); *Spencer*, 2006 WL 3408043, at *3 (mutual funds are covered securities under SLUSA). Plaintiff Broyles' allegation that he sold publicly-traded stocks and other publicly-traded securities in reliance on material misrepresentations or omissions by Commonwealth concerning the CA Funds confirms the application of SLUSA to this case.

### 3) The Related Complaint Confirms that Plaintiffs Allege That Commonwealth Misrepresented that the CA Funds Would Invest in Covered Securities.

The Complaint alleges that Plaintiffs were misled about the diversification and holdings of the CA Funds. Compl. ¶ 40. The Companion Class Action Complaint confirms that Plaintiffs allege that they were misled into investing in the CA Funds based on alleged misrepresentations that the CA Funds would invest in and purchase covered securities.[8]

The Companion Class Action Complaint alleges that Defendants Commonwealth and Morales recommended to Plaintiff Broyles and other Commonwealth clients that they invest in the CA Funds "in order to obtain better collective buying power and, thus, a better return on what Broyles was led to believe would be the *same diversified, conservative investments he held in his individual investment account*." Ex. 1 ¶ 22 (emphasis added).[9] The Companion Class Action Complaint alleges that "Commonwealth specifically represented to Broyles that his investment allocation strategy would not change and assured Broyles that his investments would, in fact, be just as safe as his previous investments [which included covered securities]. *Relying upon these misstatements and omissions of the truth, Broyles agreed to this new investment approach*." Ex. 1 ¶ 22 (emphasis added). The Court may take notice of the fact that the lead Plaintiff in this case has alleged in a related case that he was misled into believing that the CA Funds would invest in covered securities. Congress intended a broad interpretation of SLUSA,

---

[8] As discussed above, it is not necessary that the CA Funds actually purchased or sold covered securities; "claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit." *Barron*, 2010 WL 882890, at *4; *see also Instituto de Prevision Militar*, 546 F.3d at 1352 (SLUSA precluded action to hold defendant liable for fraud where third-party investment manager stole investors' money rather than purchasing securities); *Falkowski*, 309 F.3d at 1129-30 (SLUSA preempted class action relating to unexercised stock options because "if a person contracts to sell a security, that contract is a 'sale' even if the same is never consummated") (quotations omitted). In particular, courts have held that SLUSA precludes claims against investment managers who promised to invest plaintiffs' funds in covered securities, but never actually did so. *See, e.g., Barron, supra; Levinson v. PSCC Servs., Inc.*, No. 3:09-CV-00269 (PCD), 2009 WL 5184363, at *11-12 (D. Conn. Dec. 23, 2009); *Schnorr v. Schubert*, No. CIV-05-303-M, 2005 WL 2019878, at *5 (W.D. Okla. Aug. 18, 2005).

[9] The Companion Class Action Complaint alleges that Plaintiff Broyles held "stocks, bonds, mutual funds," and other covered securities. Ex. 1 ¶ 21.

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 28 of 59

and Plaintiffs cannot be allowed to evade SLUSA through artful pleading across multiple complaints.

> **d.   The Allegations in the Complaint Regarding the Collybus Transactions Satisfy SLUSA.**

The allegations in the Complaint regarding the CA Funds' Collybus purchases in 2007 and 2008 also satisfy the requirement that the Complaint allege a misrepresentation or omission in connection with the purchase or sale of a covered security.

The Complaint alleges that the CA Funds invested in securities and used those securities to effect the Collybus deal.   "The Investors' cash was used by the CA Funds, through Commonwealth, to purchase *securities*."  Compl. ¶ 39 (emphasis added).  According to the Complaint, in 2007 "the CA Funds . . . held liquid, marketable assets." Compl. ¶ 44.  The Complaint alleges that Commonwealth transferred "certain assets held by the CA Funds . . . to Cantor and/or Collybus for inclusion as Collybus collateral."  Compl. ¶ 53.  The Complaint further alleges that "Commonwealth used *valuable assets* and/or cash owned by the CA Funds to effectuate the 2007 Collybus deal and/or to purchase the Collybus C, D, and equity tranches."  Compl. ¶ 61 (emphasis added).  The Complaint alleges numerous misrepresentations and omissions of material fact in connection with "the 2007 Collybus deal."  Compl. ¶¶ 63–68.

Similarly, the Complaint alleges that "Commonwealth impermissibly used *valuable assets* and cash owned by the CA Funds to effectuate the 2008 Collybus deal and/or to purchase the Collybus A-2 tranche."  Compl. ¶ 80.  According to the Complaint, "many of the CA Funds' assets that were sold as part of the purchase of the Collybus A-2 tranche *were marketable and capable of liquidation for substantial value*."  Compl. ¶ 80 (emphasis added).  Indeed, Commonwealth allegedly used "cash generated by the liquidation of the CA Funds . . . to purchase the entire Collybus A-2 tranche."  Compl. ¶ 81.  Plaintiffs allege that the 2008 Collybus

Case 3:10-cv-00857-JJB -SCR   Document 13-1    01/19/11   Page 29 of 59

deal involved "misrepresentations and omissions of material fact in the sale of a security" and that a "reasonable jury . . . could conclude that Cantor and/or Commonwealth joined together to commit a misrepresentation or suppression of the truth." Compl. ¶ 89. Accordingly, the Complaint alleges a misrepresentation or omission in connection with the sale of a covered security with respect to the Collybus transactions. *See, e.g.*, *City of Chattanooga v. Hartford Life Ins. Co.*, No. 3:09cv516 (WWE), 2009 WL 5184706, at *2-3 (D. Conn. Dec. 22, 2009) (applying SLUSA to claims arising from "separate accounts" that were not covered securities, but which invested in covered securities); *Beary v. Nationwide Life Ins. Co.*, No. 2:06-CV-967, 2007 WL 4643323, at *4 n.3 (S.D. Ohio Sept. 17, 2007) (applying SLUSA to claims arising out of variable annuities that were not covered securities because annuities invested in covered securities).

The fact that Plaintiffs' shares in the CA Funds are not themselves covered securities does not preclude the application of SLUSA. Under SLUSA, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff *or by someone else*." *Dabit*, 547 U.S. at 85 (emphasis added). Accordingly, courts have dismissed claims under SLUSA when plaintiffs invested in hedge funds or other investment vehicles that were not themselves covered securities but that traded in (or claimed to trade in) covered securities. *See, e.g.*, *Barron*, 2010 WL 882890, at *2 (applying SLUSA to claims arising from Plaintiffs' ownership of limited partnership or other interests in "funds of funds") (quotations omitted); *Levinson*, 2009 WL 5184363, at *1-2 (applying SLUSA to claims arising out of "collective investment fund"); *City of Chattanooga v. Hartford Life Ins. Co.*, No. 3:09cv516 (WWE), 2009 WL 5184706, at *2-3 (D. Conn. Dec. 22, 2009) (applying SLUSA to claims arising from "separate accounts" that were not covered securities, but which invested in covered securities); *Backus v. Conn. Community Bank, N.A.*, Civ. No. 3:09-CV-1256, 2009 WL 5184360, at *5 (D. Conn. Dec. 23, 2009) (applying

Case 3:10-cv-00857-JJB -SCR    Document 13-1    01/19/11   Page 30 of 59

SLUSA where plaintiffs' assets were pooled in "collective investment account[s]," which were then invested in another trading entity, which then conducted trading); *Beary v. Nationwide Life Ins. Co.*, No. 2:06-CV-967, 2007 WL 4643323, at *4 n.3 (S.D. Ohio Sept. 17, 2007) (applying SLUSA to claims arising out of variable annuities that were not covered securities because annuities invested in covered securities).

<blockquote>

**e.      SLUSA Requires Dismissal of the Complaint Because All of Plaintiffs' Claims Sound in Alleged Fraud.**

</blockquote>

SLUSA "mandates the dismissal of any class action that raises state law misrepresentation and omission claims concerning a covered security," regardless of whether the claims are styled as "breach of contract" or "breach of fiduciary duty" claims. *Miller v. Nationwide Life Ins. Co.*, No. Civ. A. 03-1236, 2003 WL 22466236, at *6 (E.D. La. Oct. 29, 2003) (applying SLUSA to dismiss breach of contract claim based on misrepresentations and omissions). The "alleged misrepresentation need not represent an 'essential legal element' to fall within SLUSA preclusion." *City of Chattanooga v. Hartford Life Ins. Co.*, No. 3:09cv516, 2009 WL 5184706, at *2 (D. Conn. Dec. 22, 2009) (dismissing under SLUSA breach of fiduciary duty claims). Rather, the Court must determine "whether the individual claim depends on allegations of fraud" such that "plaintiff alleges fraud as an integral part of the conduct giving rise to the claim." *Levinson*, 2009 WL 5184363, at *12 (quotations omitted) (dismissing under SLUSA breach of contract, breach of fiduciary duty, and other claims).

Here, Plaintiffs have not pled each claim separately or divided their allegations by claim. To the contrary, Plaintiffs have alleged the same purportedly fraudulent conduct as the basis for each of the claims in the Complaint. *See, e.g.*, Compl. ¶ 66 ("Plaintiffs allege that the foregoing allegations . . . if accepted as true, constitute negligence, mismanagement of investor funds, misrepresentations and omissions of material fact in the sale of a security, violations of

Louisiana Blue Sky law, breach of fiduciary duty and/or breach of contract."); Compl. ¶ 89

(same). Because Plaintiffs' claims all sound in alleged fraud, misrepresentations and omissions,

they all should be dismissed under SLUSA.

## II. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CANTOR BECAUSE PLAINTIFFS HAVE RELEASED CANTOR FROM LIABILITY.

Although SLUSA requires the dismissal of Plaintiffs' Complaint in its entirety, the Court

also should dismiss Plaintiffs' claims against Cantor (and all of the Cantor Defendants) because

the CA Funds have released all claims against Cantor Defendants. In 2009, the CA Funds,

Commonwealth, and Cantor settled litigation surrounding the Collybus transaction. *See* Ex. 2

(Settlement Agreement between the CA Funds, Commonwealth Advisors, and Cantor). As part

of the settlement, the CA Funds released the Cantor Defendants from any and all claims,

including those pertaining to the Collybus transaction. New York law mandates that the release

be enforced according to its terms and that the Court dismiss all claims against the Cantor

Defendants.[10]

### A. The Parties Previously Settled Claims Arising from the Collybus Transaction.

On November 6, 2008, Commonwealth Advisors and the CA Funds filed an action

against Cantor related to "the purchase and subsequent financing" of Collybus. Ex. 2 at 1. On

January 8, 2009, Commonwealth Advisors and the CA Funds filed a related action against

Cantor in Louisiana state court. *Id.*

After extensive arm's-length negotiations and upon the advice of counsel, the CA Funds,

Cantor, and Commonwealth Advisors agreed to "resolve and settle all claims, issues and disputes

_____

[10] The Settlement Agreement is governed by and construed in accordance with New York law. Ex. 2 at 8 ("This Agreement is governed by and shall be construed in accordance with the state of New York without regard to its conflict of law principles.").

between them, including the claims asserted in the [two actions.]"  Ex. 2 at 2.[11]  The resulting

Settlement Agreement, executed on January 11, 2009, expressly resolved the parties' disputes

regarding the Collybus transaction.  As part of the agreement, Commonwealth and the CA Funds

agreed, *inter alia*, to release the Cantor Defendants from "all claims and causes of action,"

including those arising out of the Collybus transaction.  Specifically:

> Commonwealth Advisors, *CA Core Fixed Income Fund Ltd., CA Core Fixed Income Fund, LLC, CA High Yield Fund LLC, CA High Yield Fund, Ltd., CA Strategic Equity Fund, LLC, CA Strategic Equity Offshore Fund, Ltd., and CA Sand Spring Capital III LLC*, as well as their current and former directors . . . shareholders, partners, members, parent corporations, subsidiaries, predecessors, affiliates, successors, assigns, limited partners, funds, insurers and advisors . . . *hereby release, acquit and forever discharge Cantor Fitzgerald & Co*., *and any and all affiliates and related entities*, and their current and former directors, officers, employees, agents, shareholders, partners, members, parent corporations, subsidiaries, predecessors, affiliates . . . *from all claims and causes of action* . . . whether known or unknown, *which they ever had, now have or hereafter can, shall or may have from the beginning of the world to the date of this Release*, *including without limitation, any and all claims arising out of, in connection with, or based upon facts relating to* [the FINRA action.]

Ex. 2 at 5-6 (emphases added).   Likewise, Cantor agreed to release Commonwealth and the CA

Funds from "all claims and causes of action," including those arising out of the Collybus

transaction.  Ex. 2 at 7.

### B.    The Court Should Consider the Settlement Agreement.

Although the Settlement Agreement is not an exhibit to the Complaint, the Court should

consider the Agreement.  The Court may review a release in the context of a Rule 12(b)(6)

motion.  *See RBS Holdings, Inc. v. Wells Fargo Century, Inc*., 485 F. Supp. 2d 472, 479

---

[11] Ex. 2 at 12 ("In entering into this Agreement, [the parties] represent that they have relied upon the advice of counsel of their choosing . . . that the terms of this Agreement have been completely explained to them by their attorneys, and that those terms are fully understood and voluntarily accepted by them.").

(S.D.N.Y. 2007) ("A valid release provision may warrant dismissal, pursuant to Rule 12(b)(6), of claims encompassed by the release."); *2 Broadway L.L.C. v. Credit Suisse First Boston Mortgage Capital LLC*, No. 00Civ. 5773 GEL, 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001) (enforcing release, and dismissing claim, at 12(b)(6) stage: "It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous."); *see also Jimenez v. JP Morgan Chase & Co.*, No. 08-CV-0152W (WMC), 2008 WL 2036896, at *3 n.2 (S.D. Cal. May 8, 2008) (considering release with respect to Rule 12(b)(6) motion); *cf. Montgomery v. Sears Roebuck & Co.*, No. 09-0584, 2010 WL 4781438, at *4 (W.D. La. Oct, 14, 2010) ("[T]he court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. The Fifth Circuit has held that a district court may dismiss an action on its own motion under Rule 12(b)(6) as long as the procedure employed is fair.") (internal quotation omitted).  Even if the Court were to conclude that the Settlement Agreement were "outside the pleadings," the Court has discretion to consider the Agreement under Rule 12(d) and treat the motion to dismiss as one for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[12]

### C.     The Release Precludes Plaintiffs from Pursuing Any Claims Against the Cantor Defendants.

"[A] valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties."  *Berman v. Parco*, 986 F. Supp. 195, 208 (S.D.N.Y. 1997) (internal quotations omitted); *DuFort v. Aetna*

---

[12] If the Court decides to consider outside material and convert the motion to dismiss into one for summary judgment, then the Court must give the parties notice of the changed status of the motion and a "reasonable opportunity to present all the material that is pertinent to the motion."  Fed R. Civ. P. 12(d).

*Life Ins. Co*., 818 F. Supp. 578, 581 (S.D.N.Y. 1993) (citing *Skluth v. United Merchs. & Mfrs, Inc*., 559 N.Y.S.2d 280, 282 (App. Div. 1990)).  New York law recognizes that a "release may not be treated lightly.  It is a jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) (quoting *Mangini v. McClurg*, 249 N.E.2d 386, 390 (N.Y. 1969)).  Indeed, the New York Court of Appeals has stressed the importance of enforcing settlement agreements:  "Strong policy considerations favor the enforcement of settlement agreements.  A negotiated compromise of a dispute avoids potentially costly, time-consuming litigation and preserves scarce judicial resources . . . . Additionally, a settlement produces finality and repose upon which people can order their affairs." *Denburg v. Parker Chapin Flattau & Klimpl,* 624 N.E.2d 995, 1000 (N.Y. 1993) (citation omitted).

Here, the Settlement Agreement unambiguously releases *all* of the CA Funds' claims against the Cantor Defendants.  Ex. 2 at 6 ("all claims and causes of action").  The Agreement also specifies that the released claims include "any and all claims arising out of, in connection with, or based upon facts relating to" the Collybus transaction.  Ex. 2 at 6.  Having definitively released any and all disputes related to the Collybus transaction, both the CA Funds and the Cantor Defendants are entitled to "finality and repose." *Denburg*, 624 N.E.2d at 1000.

Although two years have passed since the parties reached their settlement, Plaintiffs seek to use a derivative action to pursue claims on behalf of the CA Fund against the Cantor Defendants arising from the Collybus transaction.  New York law precludes this attempt to evade the terms of the release.  A "clear and unambiguous release should be enforced according to its terms." *Consorcio*, 544 F. Supp. 2d at 189 (quoting *Booth v. 3669 Delaware, Inc.*, 703 N.E.2d 757, 758 (N.Y.1998)).  The release unambiguously binds the CA Funds by including or

incorporating all of them as "Releasors." Four of the six CA funds named as derivative plaintiffs are expressly listed as "Releasors"—CA Core Fixed Income Fund, LLC, CA High Yield Fund LLC, CA Strategic Equity Fund, LLC, CA Strategic Equity Offshore Fund, Ltd. The two other named funds—CA High Yield Offshore Fund, Ltd. and CA Core Fixed Income Offshore Fund, Ltd.—are "affiliates" of CA High Yield Fund, Ltd. and CA Core Fixed Income Fund, Ltd., and thus are incorporated as "Releasors" as well. *See* Ex. 2 at 6 ("CA Core Fixed Income Fund Ltd., . . . CA High Yield Fund, Ltd., . . . as well as their . . . affiliates . . . hereby release . . . .").

Likewise, the release explicitly inures to the benefit of all of the Defendant Cantor entities. Plaintiffs allege that Defendants Cantor Fitzgerald Securities, Cantor Fitzgerald, L.P., CF Group Management, Inc., CFLP CFS I Holdings, L.P., and CFS CF & Co. Holdings, LLC are affiliated with and related to Cantor Fitzgerald & Co. *See* Compl. ¶ 8(b)-(g). Additionally, Plaintiffs allege that Defendants Anzalone, Barnard, Goldman, Hubbell, LaScala, Lutnick, Matthews, Merkel, and Wells are current and former directors, officers, or employees of Cantor Fitzgerald & Co. *See* Compl. ¶ 8(h)-(p). As a result, all Cantor Defendants are included in the release. *See* Ex. 2 at 6 (releasing Cantor Fitzgerald & Co., "and any and all affiliates and related entities, and their current and former directors, officers, employees . . . .").

Under long-standing New York law, a release by a corporation binds its shareholders and precludes them from bringing a derivative action. *See Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Azioni*, 78 F.R.D. 1, 5 (S.D.N.Y. 1978) (release by corporation bound shareholders); *Thurman v. City of Lake St. Louis*, 24 F.3d 1034, 1036 (8th Cir. 1994) (corporation's release of clams barred claims by shareholder); *Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977) (release barred subsequent action by shareholders); *Golding v. Weissman*, 316 N.Y.S.2d 522 (App. Div. 1970) (per curiam); *Mendelson Bros. Factors v. Sachs*, 1 N.Y.S.2d

838, 841-42 (App. Div. 1938) (release by corporation was binding on stockholders who subsequently brought a derivative action), *aff'd*, 17 N.E.2d 459 (N.Y. 1938).[13]  Indeed, the plaintiff-shareholders are explicitly referenced and included within the Release.  *See* Ex. 2 at 6 (delineating "shareholders" and "members" of the CA Funds as "Releasors."); Compl. ¶ 7 (representative plaintiffs allege that their right to bring this derivative action arises solely in "their capacities as members and/or shareholders of any and all of the CA funds").  New York law precludes plaintiff-shareholders from circumventing the parties' Settlement Agreement through a derivative action.  Accordingly, Plaintiffs' claims against the Cantor Defendants should be dismissed with prejudice.

## III.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS FAIL TO ADEQUATELY PLEAD DEMAND FUTILITY.

Plaintiffs' Complaint also should be dismissed on the alternative ground that Plaintiffs lack standing to sue derivatively on behalf of the CA Funds.  The CA Funds are limited liability companies or "limited" entities organized under the laws of Delaware and the Cayman Islands, respectively.  Under Louisiana law, the law of the state or jurisdiction under which a limited liability company is organized governs "its organization, its internal affairs, and the liability of its managers and members that arise solely out of their positions as managers and members."  La. Rev. Stat. Ann. § 12:1342.  Thus, Delaware or Cayman Islands law governs whether Plaintiffs may sue on behalf of each of the CA Funds.  Although Plaintiffs allege that they have standing to bring this suit, Compl. ¶ 19, the Complaint does not satisfy the stringent requirements for a derivative action under Delaware or Cayman Islands law.

---

[13] *See also Hicks v. Wright*, 564 S.W.2d 785, 796 (Tex. Civ. App. 1978) (derivative cause of action barred by corporation's release); *Ackoff-Ortega v. Windswept Pacific Entm't Co.*, 120 F. Supp. 2d 273, 284 (S.D.N.Y. 2000) (plaintiffs pursing claims that were derivative of another party's interests were bound by that party's release), *aff'd*, 46 F. App'x 663 (2d Cir. 2002); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 762 (2d Cir. 1968) (court-approved settlement was binding on stockholder).

### A. Plaintiffs Have Not Adequately Pleaded Demand Futility Under Delaware Law.

Plaintiffs' right to bring a derivative claim on behalf of a Delaware limited liability company is governed by Delaware law, which provides that:

> A member or an assignee of a limited liability company interest may bring an action in the Court of Chancery in the right of a limited liability company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.

6 Del. C. § 18-1001. In other words, a putative derivative plaintiff may bring suit only if the managers of the company wrongfully have refused a demand that they initiate suit or if demand is excused as futile. Here, Plaintiffs do not allege that they made a demand on the managers of CA High Yield Fund, LLC; CA Core Fixed Income Fund, LLC; or CA Strategic Equity Fund, LLC (together, the "Delaware CA Funds") that they initiate suit against the Cantor Defendants. Nor does the Complaint sufficiently allege that any such demand would have been futile. Therefore, Plaintiffs lack standing to bring a derivative action against the Cantor Defendants in the name of the Delaware CA Funds.

Under Delaware law, "plaintiffs must plead 'with particularity' why a demand on the board would be futile."[14] *Engel v. Sexton*, No. 06-10447, 2009 WL 361108, at *4 (E.D. La. Feb. 11, 2009). This requirement "is not satisfied by conclusory statements or mere notice pleading . . . . What the pleader must set forth are particularized factual statements that are essential to the

---

[14] Although Louisiana law does not apply to this issue, the Louisiana code also specifies that demand futility must be plead with particularity. La. Code Civ. Proc. Ann. art. 615 ("The petition in a class action brought by a shareholder, partner, or member of a corporation . . . because it refuses to enforce a right which it may enforce shall . . . [a]llege with particularity the efforts of the plaintiff to secure from the managing directors . . . the enforcement of the right and the reasons for his failure to secure such enforcement, or the reason for not making such an effort to secure enforcement of the right."). Federal Rule of Civil Procedure 23.1 also requires particularity in allegations of demand futility. *See* Fed. R. Civ. P. 23.1(b) ("The complaint must be verified and must . . . state with particularity . . . (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.").

claim." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (footnote omitted). This heightened

pleading requirement is designed to prevent shareholders from "caus[ing] the corporation to

expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a

purported corporate claim based solely on conclusions, opinions or speculation." *Id.* at 255

(quoted in *Engel*, *supra*).

"[W]here it is alleged that the directors made a conscious business decision in breach of

their fiduciary duties," Delaware courts apply the test enumerated in *Aronson v. Lewis*, 473 A.2d

805, 814 (Del.1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del.

2000). *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). The *Aronson* test "requires that the

plaintiff allege particularized facts creating a reason to doubt that '(1) the directors are

disinterested and independent [or that] (2) the challenged transaction was otherwise the product

of a valid exercise of business judgment." *Wood*, 953 A.2d at 140 (quoting *Aronson*, 473 A.2d at

814). In other words, to state a claim of demand futility, there are two alternative hurdles. First,

the plaintiff may claim that demand is futile because a majority of the board of directors either

has a financial interest in the challenged transaction or lacks independence. In the alternative, if

the plaintiff cannot meet the first test, the plaintiff must plead particularized facts creating a

reasonable doubt as to the "soundness" of the challenged transaction sufficient to rebut the

presumption that the business judgment rule attaches to the transaction. *See Levine v. Smith*, 591

A.2d 194, 205-06 (Del. 1991), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 253-

54 (Del. 2000); Welch, Turezyn, & Saunders, *Folk on the Delaware General Corporation Law:*

*Fundamentals* § 327.4.2.1, at 961 (2011).

Plaintiffs' allegations regarding demand futility are contained in three paragraphs of the

complaint. *See* Compl. ¶¶ 22-24. As to the claims against the Cantor Defendants, the vague and

generalized allegations in the Complaint do not satisfy either prong of the *Aronson* test.

Plaintiffs cannot satisfy the first *Aronson* prong because they have not pleaded particular facts sufficient to raise a reasonable doubt that the managers or board of the Delaware CA Funds were disinterested and independent. A director's decision is independent if it is "based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. A director is "interested if he will be materially affected . . . by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).

While the Complaint reiterates the term "self-dealing" several times, it does not allege with respect to the various Collybus transactions that Morales and the other Commonwealth Defendants appeared on both sides of the transaction or received any payment from Cantor. The allegation that Morales and Commonwealth approved the Collybus transaction is insufficient. Under Delaware law, "mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand." *Aronson*, 473 A.2d at 817. There is no allegation that the managers of the Delaware CA Funds held positions with Cantor or were beholden to Cantor. The Complaint fails to make any particularized allegations as to why demand for a suit against Cantor would have been futile.

Plaintiffs speculate in the Complaint that Morales would not sue Cantor because Cantor could perhaps seek indemnification against Morales and Commonwealth. *See* Compl. ¶ 22. This hypothetical is insufficient. The mere risk of personal liability does not compromise independence. Reasonable doubt that a majority of directors is capable of considering demand should be found only where "a substantial likelihood of director liability . . . exists." *Aronson*,

31

473 A.2d at 815. The claim that "directors could not be expected to sue themselves . . . raises no legally cognizable issue under Delaware corporate law." *Id.* at 818. Moreover, the risk of personal liability to Morales from a Cantor action for indemnification is zero. Morales is not a party to any indemnification agreement with Cantor, and Cantor is not claiming indemnification from him. Baseless speculation that Morales would not cause the CA Funds to sue Cantor because Cantor might then seek indemnification from him is insufficient to show "substantial likelihood of personal liability" and cannot excuse demand.

The second step of the *Aronson* analysis "focuses on the substantive nature of the challenged transaction and the board's approval thereof." *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000). Plaintiffs must allege sufficient particularized facts "to determine whether a reasonable doubt exists at the threshold that the challenged action was a valid exercise of business judgment." *Id.* The mere allegation that a challenged transaction constitutes a wrong to the corporation is insufficient to demonstrate demand futility. *See Lewis v. Daum*, 9 Del. J. Corp. L. 481, 485, 1984 WL 8223 (Del. Ch. May 29, 1984). "Rather, the second prong of *Aronson* is directed to 'extreme cases' in which, despite the appearance of independence and disinterest, a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review. The test is thus necessarily high, similar to the legal test for waste." *Folk on the Delaware General Corporation Law* § 327.4.2.5, at 972-73 (internal quotations omitted).

The Complaint falls far short of alleging particularized facts that the Collybus transaction constituted legal waste or that the decision to enter the transaction was so grossly negligent as to warrant further judicial scrutiny. "It is well established that the mere fact that a company takes on business risk and suffers losses—even catastrophic losses—does not evidence misconduct,

and without more, is not a basis for personal director liability." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 130 (Del. Ch. 2009). The allegation that the CA Funds have sustained losses through various investments, including Collybus, does not suffice. The central allegation of this case is that the CA Funds lost money because they invested in Collybus. There is no allegation of legal waste. Nor are there any particularized allegations sufficient to show that the Collybus transaction was so extreme or curious as to justify further inquiry.

In sum, conclusory allegations of self-dealing do not suffice to show demand futility, no matter how often they are repeated. Lacking particularized facts, this Complaint does not provide reason to doubt that the managers of the Delaware CA Funds were independent *vis-a-vis* the Cantor Defendants or that the Collybus transaction resulted from valid business judgment. Accordingly, demand futility has not been adequately pleaded, and Plaintiffs lack standing to sue on behalf of the Delaware CA Funds.

## B. Plaintiffs Lack Standing To Bring This Suit Under Cayman Islands Law.

Cayman Islands courts follow English and/or Commonwealth common law authorities with respect to shareholder derivative actions. *See* Akiwumi Aff. (Ex. 2) ¶¶ 7-9, 13;[15] *Winn v. Schafer*, 499 F. Supp. 2d 390, 393-94 (S.D.N.Y. 2007). English common law disfavors shareholder derivative actions, except in certain narrow circumstances, none of which Plaintiffs have pleaded adequately. Accordingly, the derivative claims asserted on behalf of CA High

---

[15] Attached to this memorandum as Exhibit 2 is the Affidavit of Anthony Akiwumi, a Cayman Islands attorney, regarding the content of Cayman Islands law. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). If the plaintiff lacks standing, this Court is without subject matter jurisdiction. In evaluating an argument that the Court lacks subject matter jurisdiction, the Court may consider matters outside the pleadings without converting the motion to one for summary judgment. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). As stated in the Akiwumi Affidavit, there are a number of decisions of the Cayman Islands First Instance Court (the Grand Court) and the Cayman Islands Court of Appeal which demonstrate that Cayman Islands courts apply English common law principles regarding shareholder derivative proceedings. *See* Akiwumi Aff. ¶¶ 9, 13-14 & n.2.

Yield Offshore Fund, Ltd.; CA Core Fixed Income Offshore Fund, Ltd.; and CA Strategic Equity Offshore Fund, Ltd. (together, the "Cayman CA Funds") should be dismissed.

The general rule under English common law is that potential derivative claims are owned and controlled by the company and not its shareholders. It is for the board of directors to decide what valid claims the company may have, and whether those claims should be pressed. This fundamental principle is known as the rule in *Foss v. Harbottle*, (1843) 2 Hare 461 (Eng. 1863). *See Winn*, 499 F. Supp. 2d at 396; *Tyco*, 340 F. Supp. 2d 94, 98 (D.N.H. 2004) (applying *Foss*); *Seghers v. Thompson*, No. 06CIV308RMBKNF, 2006 WL 2807203 at *4 (S.D.N.Y. Sept. 27, 2006) (same). Cayman Islands courts have applied the rule in *Foss* in numerous Cayman cases. Akiwumi Aff. ¶¶ 13-14. There are four exceptions to the general rule of *Foss*. English common law allows shareholders to sue derivatively if the alleged conduct: (1) requires a special majority to ratify; (2) infringes a shareholder's personal rights; (3) is ultra vires; or (4) qualifies as a "fraud on the minority." *Winn*, 499 F. Supp. 2d at 396 (citing *Tyco*, 340 F. Supp. 2d at 98).

Plaintiffs have not pleaded that the alleged conduct infringed their personal rights. Accordingly, that exception cannot apply. As discussed below, because none of the three remaining exceptions applies, Plaintiffs lack standing to sue under the rule of *Foss*.

### 1.    Plaintiffs Have Not Pleaded that a Special Majority Is Required To Ratify the Alleged Conduct.

Where the articles of association of a company require a particular type of action by a super-majority or special resolution, the proposed act or transaction cannot be sanctioned or ratified by a simple majority. Akiwumi Aff. ¶¶ 22-23. The relevant question is whether "the shareholders *could* validate the alleged improprieties by a vote that absolved the directors of personal liability to the corporation." *City of Harper Woods Employees' Ret. Sys. v. Olver*, 577 F. Supp. 2d 124, 133 (D.D.C. 2008), *aff'd*, 589 F.3d 1292 (D.C. Cir. 2009) (emphasis in

original).  The question of what shareholders should have been told or were not told "is irrelevant to the ratifiability of certain conduct."  *Id*. (emphasis omitted).

Here, Plaintiffs have not alleged that the conduct here was not "ratifiable."  Rather, Plaintiffs have alleged, without any detail, that the 2007 and 2008 Collybus transactions "cannot and would not have been ratified by a simple majority of the members and/or shareholders of the CA Funds."  Compl. ¶ 23.  The Complaint alleges that, even if the shareholders had been asked, they would not have ratified the transactions because the transactions were so egregious.  *See* Compl. ¶ 23.  Allegations that the shareholders *would not* ratify conduct do not suffice to show that a majority of shareholders *could not* ratify conduct.  Accordingly, Plaintiffs have not adequately pleaded this exception to the *Foss* rule.

### 2. Plaintiffs Have Not Alleged Ultra Vires Conduct Within the Meaning of English Common Law.

Plaintiffs have not adequately pleaded ultra vires action under English common law. "[U]ltra vires has a very narrow meaning in English company law."  *City of Harper*, 577 F. Supp. 2d at 133.  "For the purpose of the rule in *Foss v. Harbottle*, the term 'ultra vires' refers to a transaction that is either beyond the capacity of a company as established by its memorandum of association or a transaction prohibited by the statute to which a company owes its existence." *Id*. at 133-34; Akiwumi Aff. ¶¶ 19-21.  Plaintiffs have not alleged that any of the transactions in question are beyond the capacity of the companies pursuant to their memoranda of association or are prohibited by a Cayman Islands statute.  Although Plaintiffs assert that certain defendants' conduct was "ultra vires," Compl. ¶ 23, Plaintiffs have not alleged that any of the transactions in question are beyond the capacity of the companies pursuant to their memoranda of association or are prohibited by the Cayman Islands Companies Law.  Accordingly, the ultra vires exception does not apply.

### 3. Plaintiffs Have Not Adequately Pleaded a Fraud on the Minority.

In order to invoke the "fraud on the minority" exception, "it must be the case that: (1) Defendants have, in breach of their fiduciary duty, committed fraud; that is, they have taken advantage of their position to commit the company to transactions that benefit themselves at the expense of the company, and (2) the Defendants were in control of the company for all practicable purposes." *City of Harper*, 577 F. Supp. 2d at 135 (internal references omitted).

The first prong of the exception requires a showing of "fraud," but not "as an American court would understand the term. Instead, English courts speak of fraud in this context in a broader equitable sense in which control is misused to benefit the wrongdoers at the company's expense." *Tyco*, 340 F. Supp. 2d at 99. The classic definition of fraud in this context is that fraud embraces all cases where the wrongdoers "are endeavouring, directly or indirectly to appropriate for themselves money, property or advantages which belong to the company or in which the other shareholders are entitled to participate." Akiwumi Aff. ¶ 26. It is therefore an essential element of the concept of "fraud on the minority" that the persons engaging in the fraudulent conduct should have received some benefit, and Plaintiffs must establish a causal link or nexus between the alleged wrongdoing and the alleged benefit. Akiwumi Aff. ¶ 27.

"Thus, English law, unlike its American counterpart, does not permit a derivative action to be maintained to remedy a breach of fiduciary duty that does not involve self-dealing by those in control." *Tyco*, 340 F. Supp. 2d at 99. Allegations of increased compensation or bonuses flowing from alleged misconduct do not constitute "self-dealing" and will not support application of the exception. *See, e.g.*, *City of Harper*, 577 F. Supp. 2d at 135 (allegations that misconduct was designed to ensure Defendants received lucrative payments and bonuses insufficient); *Winn*, 499 F. Supp. 2d at 398 (allegations that misconduct resulted in Defendants receiving "substantial salaries, bonus payments, benefits, and other emoluments" insufficient).

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 45 of 59

The Complaint in this case contains conclusory allegations that the Commonwealth defendants engaged in "self-dealing," *see, e.g.*, Compl. ¶ 24, but does not allege facts that would establish the kind of self-dealing required to satisfy this prong of the fraud on the minority exception. Plaintiffs allege that the Commonwealth Defendants engaged in the alleged misconduct so that they could artificially inflate the value of the assets in the CA Funds and thereby safeguard the "management fees, transaction fees, performance fees and/or other fees and commissions which were based . . . on the value of the CA Funds as shown on the Investors' investment statements." Compl. ¶ 46; *see also* Compl. ¶ 95 (alleging that Commonwealth continued "to collect substantial management fees based on inflated values of the CA Funds as claimed by Commonwealth"). At bottom, Plaintiffs allege that the Commonwealth Defendants caused the CA Funds to make poor investments so that they could continue to receive certain fees and payments. This kind of transaction does not constitute the kind of self-dealing recognized in other cases that have applied Cayman/English common law.

Under the second prong of the "fraud on the minority" exception, a putative derivative plaintiff must show that defendants exercised control of the company. Again, under Cayman/ English common law, "control" has a particular meaning. "[A] corporation's board of directors will be deemed to have control of a majority of the corporation's voting shares for purposes of the fraud on the minority exception if the evidence demonstrates that it has acquired de facto control." *Tyco*, 340 F. Supp. 2d at 99 (italics omitted). The Complaint makes vague allegations regarding who controlled the CA Funds and asserts the conclusion that Morales had "de facto control over the actions of the CA Funds." *See* Compl. ¶ 24; *see also, e.g.*, Compl. ¶ 22 (asserting that "Morales and *either* Commonwealth Advisors, Inc. *or* Noel Caldwell . . . constituted a majority of the board of directors and/or managers members") (emphases added).

Plaintiffs' only support for the allegation that Morales exercised de facto control is the entirely circular argument that such control is "evidenced in part by the deals Morales struck with Cantor which caused the CA Funds to lose hundreds of millions of dollars." Compl. ¶ 24. That is insufficient.

Having failed to satisfy the standard under either Delaware or Cayman Islands law, Plaintiffs' claims may not be brought derivatively on behalf of any of the CA Funds. The Complaint should therefore be dismissed.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.

Finally, the Court should dismiss all of Plaintiffs' claims against Cantor because the Complaint fails to state a claim on which relief may be granted.

### A. The Pleading Requirements of *Twombly* and Rule 9(b).

In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A valid complaint must describe each claim "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests" and "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. . . ." *Davis v. E. Baton Rouge Parish Sheriff's Office*, No. 08-708, 2010 WL 4962812, at *1 (M.D. La. Dec. 1, 2010) (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007)). The Court should dismiss a complaint that fails to allege sufficient facts to establish a plausible basis for all of the material elements of each claim. *Twombly*, 127 S. Ct. at 1969.

Additionally, to assert a claim sounding in fraud, Plaintiffs must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[16]  The Fifth Circuit "strictly"

interprets Rule 9(b) to require a plaintiff to "specify the statements contended to be fraudulent,

identify the speaker, state when and where the statements were made, and explain why the

statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp*.,

565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs, Inc*., 112 F.3d 175, 177 (5th

Cir. 1997), *cert. denied*, 130 S. Ct. 199 (2009)); *see also Herrmann Holdings Ltd. v. Lucent

Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).  In other words, Rule 9(b) requires the

complaint to set forth the "who, what, when, where, and how" of the alleged fraud.  *ABC

Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

    This higher standard "stems from the obvious concerns that general, unsubstantiated

charges of fraud can do damage to a defendant's reputation."  *Guidry v. Bank of LaPlace*, 954

F.2d 278, 288 (5th Cir. 1992).  In securities fraud suits, this heightened pleading standard

provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to

their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from

filing baseless claims and then attempting to discover unknown wrongs.  *Tuchman v. DSC

Commc'ns Corp*., 14 F.3d 1061, 1068 (5th Cir. 1994).

### B.    Plaintiffs' Claims Are Subject to the Heightened Pleading Requirements of Rule 9(b).

    The heightened pleading requirements of Rule 9(b) apply not only to fraud claims, but

also to "non-fraud" claims based on allegations of fraud.  *In re CLK Energy Partners, LLC*, No.

09-50616, 2010 WL 1930065, at *2 (Bankr. W.D. La. May 12, 2010).  "[I]f a breach of fiduciary

---

[16] Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b). *See, e.g*., *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2003) ("Fed. R. Civ. P. 9(b) applies to securities fraud claims").  A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).  *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 901 (5th Cir. 1997).

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 48 of 59

claim is grounded in whole or in part on allegations of fraud, the fraud allegations must comply with Rule 9(b)." *Id.* at *2.

A review of the Complaint reveals that, even though it does not contain the word "fraud," most—if not all—of Plaintiffs' claims against the Cantor Defendants sound in alleged fraud. For example, paragraph 103(a) of the Complaint asserts a claim for violations of Louisiana Blue Sky law under La. R.S. 51:701, *et seq.* Plaintiffs' claims for negligent and/or intentional misrepresentations (Compl. ¶¶ 103(b), (e), 105) also are considered allegations of "fraud" for purposes of Rule 9(b). *See* La. R.S. 51:712 (precluding fraudulent misrepresentations). Under Fifth Circuit precedent, an "allegation of intentional misrepresentation is essentially an allegation of fraud," and therefore, must meet the heightened Rule 9(b) standard. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Lang v. DirecTV, Inc.,* __ F. Supp. 2d __, No. 10-1085, 2010 WL 3211081, at *8 (E.D. La. Aug. 13, 2010). Likewise, the Rule 9(b) pleading requirement applies to negligent misrepresentation claims when they are based on the same set of alleged facts as fraud claims. *See Williams*, 112 F.3d at 177 (upholding Rule 9(b) dismissal of negligent misrepresentation claim because (1) it relied on the same misrepresentations as federal fraud claims and (2) "the parties ha[d] not urged a separate focus"); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on same operative facts as insufficient fraud claim). Indeed, Plaintiffs frame their claims as being one and the same: "negligent and/or intentional misrepresentation[]." Compl. ¶ 103(b), (e).

Plaintiffs seek damages from the Cantor Defendants based upon allegations of the following:

(1)     Breach of fiduciary duty;
(2)     Negligent and/or intentional misstatements and omissions of the truth;
(3)     Negligent and/or intentional misrepresentations of material fact and omissions of material fact in connection with the sale of securities;
(4)     Negligent and /or intentional mismanagement of the CA Funds;
(5)     Violations of La. C.C. art. 2315;
(6)     Violations of the Louisiana Blue Sky Law; and
(7)     Breach of contract and/or absolute nullity of contract.

Plaintiffs make no attempt to distinguish among these claims; instead, the claims are intertwined with the claims of intentional misrepresentation (*i.e.*, fraud), and therefore must meet the same heightened pleading requirements. In fact, Plaintiffs point to the identical factual allegations and allege that "the foregoing allegations . . . constitute negligence, mismanagement of investor funds, misrepresentations and omissions of material fact in the sale of a security, violations of Louisiana Blue Sky law, breach of fiduciary duty and/or breach of contract." Compl. ¶¶ 66, 89. Thus, because the "non-fraud" claims are clearly based on allegations of fraud, Rule 9(b) applies and all of the claims against Cantor should be dismissed.

**C.      The Complaint Fails To Satisfy the Pleading Requirements of *Twombly* and Rule 9(b).**

The dearth of factual allegations in the Complaint demonstrates that Plaintiffs do not have a factual basis for their claims against the Cantor Defendants. Because the Complaint fails to plead sufficient facts to support the elements of each claim, the Court should dismiss Plaintiffs' claims against the Cantor Defendants.

**1.      The Breach of Fiduciary Duty Claim Is Insufficient.**

The Complaint includes a claim for breach of fiduciary duty. Compl. ¶ 103. Notably absent from the 111 paragraphs of the Complaint, however, is a single allegation that the Cantor Defendants owed a fiduciary duty to Plaintiffs.

As a basic proposition, in order for a fiduciary duty to exist, there must be a fiduciary relationship between the parties. *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641 (La. 2007). Under Louisiana law:

> The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and a person occupying such a relationship can not further his own interests and enjoy the fruits of an advantage taken of such relationship. He must make full disclosure of all material facts surrounding the transaction that might affect the decision of his principals.

*Gerdes v. Estate of Cush*, 953 F.2d 201, 204-05 (5th Cir. 1992) (per curiam) (brackets omitted) (quoting *Plaquemines Parish Comm'n Council v. Delta Development Co*., 502 So. 2d 1034, 1040 (La. 1987)). As noted by one Louisiana court, "[t]he essence of the fiduciary duty lies in the special relationship between the parties." *Beckstrom v. Parnell*, 730 So. 2d 942, 947 (La. Ct, App. 998). Louisiana jurisprudence has recognized the existence of fiduciary obligations involving attorneys, stockbrokers, trustees, usufructuaries, executors, administrators, and directors and officers of a corporation. *Wadsworth v. ABC Ins. Co.,* 732 So. 2d 56, 58 (La. Ct. App. 1998), *writ denied*, 742 So. 2d 558 (La. 1999). In all of these relationships, there exists a close, direct relationship between the fiduciary and the person to whom the obligation is owed.

In this case, Plaintiffs do not—and cannot—allege that a fiduciary relationship existed between Plaintiffs and the Cantor Defendants. Nor does the Complaint allege any facts regarding the relationship between Plaintiffs and the Cantor Defendants that would create an alleged fiduciary duty on the part of the Cantor Defendants. Because Plaintiffs have failed to allege even the most basic requirement of a breach of fiduciary claim—a fiduciary duty— Plaintiffs' breach of fiduciary duty claim against the Cantor Defendants is defective and should be dismissed for failure to state a claim.[17]

---

[17] To the extent Plaintiffs may attempt to rely on Cantor's relationship with Commonwealth, the Complaint lacks any factual allegations whatsoever that Cantor controlled, or had any ability to control, Commonwealth. Indeed,

## 2. The Negligence Claims Are Insufficient.

As previously noted, Plaintiffs' negligent misrepresentation claim and related negligence claims[18] must meet the same heightened pleading requirements as fraud claims based on the same alleged facts. *See Williams*, 112 F.3d at 177. At a minimum, in order to satisfy the requirements of Rule 9(b), Plaintiffs must allege the time, place and content of the alleged false representations or omissions, as well as the identity of the person making the misrepresentations or omissions. *In re Taxable Mun. Bond Secs. Litig.*, No. 863 (MDL), 1993 WL 591418, at *2 (E.D. La. Dec. 29, 1993) (citing *Keith v. Stoelting, Inc.*, 915 F.2d 996 (5th Cir. 1990) (per curiam).

The Complaint does not allege sufficient facts to state a negligence claim against the Cantor Defendants.[19] Plaintiffs' allegations of negligent misstatements, negligent misrepresentations, negligent mismanagement, along with other alleged violations of La. C.C. 2315, are defective because Plaintiffs fail to allege a required element for these causes of action—a legal duty owed to Plaintiffs.

---

Commonwealth filed suit against Cantor in 2008 and 2009 in connection with the Collybus transaction, demonstrating that Cantor does not control Commonwealth in any respect. As discussed *supra*, on November 6, 2008, Commonwealth Advisors and the CA Funds filed an action against Cantor related to the "purchase and subsequent financing" of Collybus. Ex. 2 at 1. On January 8, 2009, Commonwealth Advisors and the CA Funds filed a related action against Cantor in Louisiana state court. *Id.*

[18] In addition to a claim for negligent and/or intentional misrepresentation, Plaintiffs also have asserted claims for negligent and/or intentional misstatements and negligent and/or intentional mismanagement. The Cantor Defendants respectfully submit that these related claims are also subject to the heightened pleading standard of Rule 9(b) because they are based on the same set of alleged facts as the fraud claims.

[19] In Paragraph 110 of the Complaint, Plaintiffs once again make general conclusory allegations by alleging that Cantor is vicariously liable for "any tortious acts of Thomas Joseph Anzalone, Douglas Rankin Barnard, Irvin Goldman, Gina Hubbell, Edward LaScala, William Howard Lutnick, Shawn Peter Matthews, Stephen M. Merkel, Andrew Craig Wells, and any other employees or agents which were committed in the course and scope of their employment." Compl. ¶110. However, Plaintiffs fail to identify a single tortious act by any Cantor employee or agent. Without any specific allegations, the Cantor Defendants cannot even begin to frame a responsive pleading.

The common law tort of negligent misrepresentation and other similar negligence claims are encompassed within the broad language of Louisiana Civil Code articles 2315 and 2316. *Devore v. Hobart Mfg. Co.,* 367 So. 2d 836 (La. 1979). To recover for negligent misrepresentation, a plaintiff must establish all of the following essential elements: (1) a legal duty on the part of the defendant to supply correct information to the plaintiff; (2) a breach of this duty; and (3) damages to plaintiff as a result of his justifiable reliance upon the misrepresentation. *Id.* at 839; *Busby v. Parish Nat'l Bank*, 464 So. 2d 374, 377 (La. Ct. App. 1985). Likewise, claims for negligent misstatements and negligent mismanagement require that the Complaint allege a legal duty on the part of the Cantor Defendants, a breach of that duty, and damages to Plaintiffs. Plaintiffs fail to allege a legal duty on the part of any Cantor Defendant to Plaintiffs. Without any allegation of a duty owed by the Cantor Defendants to Plaintiffs, Plaintiffs' negligence claims fail and must be dismissed.

### 3. The Fraud Claims Are Insufficient.

The Complaint alleges intentional misrepresentation and fraud under the Louisiana Blue Sky law, but lacks any factual allegations purporting to tie Cantor or the Cantor Defendants to any purported misrepresentations. Allegations of intentional misrepresentation are tantamount to allegations of fraud and must be pleaded with particularity. *Unimobil 84*, 797 F.2d at 217. Contrary to Rule 9(b)'s particularity requirements, the Complaint contains only conclusory allegations against the Cantor Defendants that clearly are insufficient to state a cognizable fraud claim.

The Complaint lacks any factual allegations in support of its sweeping fraud allegations against the Cantor Defendants. After alleging that Cantor entered into certain agreements with Commonwealth (Compl. ¶¶ 52-53, 56) and placed the Collybus securities for sale (Comp. ¶¶ 57, 59), Plaintiffs simply allege that Cantor "knew" certain alleged facts. For example, Plaintiffs

allege that Cantor "knew" that Commonwealth was not purchasing the Collybus securities "as part of a legitimate investment;" that Commonwealth intended to use the assets to "artificially inflat[e] the value of the CA Funds;" and that Commonwealth "intended to profit from the 2007 Collybus transaction." Compl. ¶ 63. Plaintiffs further allege that Cantor "knew" that "Commonwealth was benefitting from the June 2008 sale of Collybus to the detriment of its Investors," that "the CA Funds were using leverage to complete the sale and the sale would result in the CA Funds owning a single, illiquid asset." Compl. ¶ 88.

Merely alleging that Cantor "knew" certain things, however, is insufficient to show that Cantor made an intentional misrepresentation to Plaintiffs. The Complaint is insufficient in failing to allege any purportedly fraudulent statements by Cantor. In addition, the Complaint lacks any allegations identifying whom at Cantor allegedly was involved in any purportedly fraudulent statements. After listing nine different current and former Cantor employees (along with seven different Cantor entities), the Complaint does not contain a single factual allegation mentioning any one of these individuals. Compl. ¶ 8. Rather, Plaintiffs group all of the Cantor entities together and label them as "Cantor" or "the Cantor defendants." Compl. ¶ 9. This clearly is insufficient to meet the requirements of Rule 9(b).

### 4. The Breach of Contract Claim Is Insufficient.

In Paragraph 103(g) of the Complaint, it appears that Plaintiffs attempt to assert a breach of contract claim against the Cantor Defendants. The elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *See, e.g.*, *Barnett v. Bd. of Trs. for State Colls. & Univs.*, 809 So. 2d 184, 189 (La. Ct. App. 2001) ("[T]here is an absence of factual support for an element essential to Barnett's claim for breach of contract, i.e., that there was a contract."); *Sevarg Co., Inc. v. Energy Drilling*

Case 3:10-cv-00857-JJB -SCR   Document 13-1   01/19/11   Page 54 of 59

*Co.*, 591 So. 2d 1278, 1279 (La. Ct. App. 1991). Plaintiffs completely fail to allege the elements of a breach of contract claim against the Cantor Defendants. Accordingly, this claim should be dismissed.

### 5. Any Conspiracy Claim Is Insufficient.

For the same reasons that the Complaint's fraud and misrepresentation claims fail, so do any "conspiracy" allegations. Although the Complaint does not assert a conspiracy claim, it alleges that Cantor "joined together" with Commonwealth. Compl. ¶¶ 52, 66, 89, 105. In the event the Complaint purports to allege conspiracy, this claim fails as well.

Any allegation of conspiracy to commit fraud must meet the same heightened pleading requirements as allegations of fraud. *E.g.*, *Lentz v. Trinchard*, __ F. Supp. 2d. __, No. 02-1235, 2010 WL 3070413, at *7 (E.D. La. Aug. 2, 2010) ("The particularity requirement of Rule 9(b) also governs a conspiracy to commit fraud.") (quoting *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 759, 766 (S.D. Tex. 2007)); *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 596-98 (E.D. La. 1993). In particular, "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (quoting *FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)). This heightened pleading requirement must be applied to each of the elements of conspiracy under Louisiana law, namely: (i) an agreement; (ii) to commit an illegal or tortious act; (iii) which resulted in the plaintiff's injury. *Butz v. Lynch*, 710 So. 2d 1171, 1174 (La. Ct. App. 1998), *writ denied*, 721 So. 2d 473 (La. 1998); *Aranyosi v. Delchamps, Inc.*, 739 So. 2d 911, 917 (La. Ct. App. 1999), *writ denied*, 750 So. 2d 187 (La. 1999).

The heightened pleading requirement under Rule 9(b) does not replace, but rather supplements, the requirement under Rule 8(a) that a complaint allege "enough facts taken as true

46

to state a claim to relief that is plausible on its face." *Lentz*, 2010 WL 3070413, at *8 (internal

brackets omitted) (quoting *Grubbs*, 565 F.3d at 185 and *Twombly*, 550 U.S. at 570). In

*Twombly*, the Supreme Court held that an antitrust conspiracy claim was insufficient because it

made only conclusory allegations of an agreement without identifying the time, place, or persons

involved in the alleged conspiracy. Similarly, in *Red Rock Investments v. JAFCO Ltd., Inc.*, 79

F.3d 1146, 1996 WL 97549 (5th Cir. Feb. 16, 1996) (unpublished decision), the Fifth Circuit

affirmed the dismissal of a claim of conspiracy to defraud where the plaintiffs had failed to plead

with particularity under 9(b):

> [T]he plaintiffs' allegations failed to allege fraud and conspiracy to defraud with
> sufficient particularity to escape FED. R. CIV. P. 9(b)'s pleading standard for those
> offenses. The plaintiffs' allegations, as amended, were general and did not state the time,
> place, or content of any misrepresentation by Mitsubishi to the plaintiffs, or the identity
> of the person making the misrepresentation. They therefore did not satisfy rule 9(b).

*Id.* at *3.

Here, a review of the Complaint shows that there are no facts sufficiently pleaded to

support the conspiracy allegations. The Complaint does not allege *who* agreed to an alleged

fraudulent scheme, *when* the alleged agreement took place*, how* the alleged agreement came

about, *what* misrepresentations allegedly were made by the Cantor Defendants (or *when* they

were made or by *whom*), or anything of the kind. The allegations that Cantor entered into

various agreements with Commonwealth relating to the 2007 and 2008 Collybus transactions,

Compl. ¶¶ 53, 56, 75, 101, plainly are insufficient to support a conspiracy claim. As an initial

matter, entering into agreements of the type that Cantor entered with Commonwealth was a

lawful and regular part of Cantor's business, and therefore those agreements cannot form the

basis of a conspiracy claim. *Thomas v. North 40 Land Dev., Inc.*, 894 So. 2d 1160, 1174 (La. Ct.

App. 2005); *Hall v. Lilly*, 697 So. 2d 676, 680 (La. Ct. App. 1997); *Cotonio v. Richardson*, 9 Teiss. 242, 1912 WL 1765, at *3 (La. Ct. App. 1912).

Furthermore, Plaintiffs' allegations are not sufficient to support a claim of conspiracy under Louisiana law because they do not show "an agreement as to the *intended outcome or result* of their acts," or that the agreement was for "some unlawful, immoral, criminal or evil purpose." *Walker v. Am. Honda Motor Co., Inc.*, 640 So. 2d 794, 797 (La. Ct. App. 1994), (emphasis in original); *see also Hall*, 697 So. 2d at 678. In other words, "[f]or a conspiracy to exist, there must be 'unity of purpose or a common design and understanding or a meeting of minds in an unlawful arrangement.'" *Junior Money Bags, Ltd. v. Segal*, 798 F. Supp. 375, 380 (E.D. La. 1990) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)), *aff'd*, 970 F.2d 1 (5th Cir. 1992). A party alleging conspiracy must prove "not only that a conspiracy existed, but also that the alleged conspiracy was designed for [the claimant's] detriment." *Kiva Constr. & Eng'g v. Int'l Fid. Ins. Co*., 749 F. Supp. 753, 756 (W.D. La 1990) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 583-86 (1986)).

Nowhere in the Complaint do Plaintiffs allege with particularity the existence of an agreement on an intended evil outcome, or a design to harm Plaintiffs. Courts applying Louisiana law routinely have dismissed claims of conspiracy to defraud because of factually insufficient pleadings. *E.g.*, *Red Rock*, 1996 WL 97549, at *3; *Lentz*, 2010 WL 3070413, at *10; *Sw. La. Healthcare Sys. v. MBIA Ins. Corp.*, No. 05-1299, 2007 WL 979933, at *3 (W.D. La. Mar. 29, 2007); *see also Chrysler Credit*, 824 F. Supp. at 596-98 (granting motion *in limine* on same basis to exclude evidence of alleged conspiracy to defraud). Plaintiffs' "conspiracy-type" claims, if any, should be dismissed for the same reasons.

## <u>CONCLUSION</u>

For the foregoing reasons, Cantor respectfully requests that the Court dismiss this action

with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:    /s/ Jane A. Robert
            Michael D. Hunt, Bar No. 7061
            Jane A. Robert, Bar No. 19123
            II City Plaza
            400 Convention Street • Suite 1100
            Baton Rouge, Louisiana 70802-5618
            P.O. Box 4412
            Baton Rouge, Louisiana 70821-4412
            Telephone: (225) 346-0285
            Telecopier: (225) 381-9197
            Email: huntm@phelps.com
                   robertj@phelps.com

*Of counsel:*

**WILLIAMS & CONNOLLY LLP**
Dane H. Butswinkas
R. Hackney Wiegmann
Marcie R. Ziegler
James H. Weingarten
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
Email:  hwiegmann@wc.com
        mziegler@wc.com


*Attorneys for Cantor Fitzgerald & Co.*

Dated:  January 19, 2011

49

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Memorandum in Support of Cantor Fitzgerald & Co.'s Motion to Dismiss Complaint with Prejudice for Lack of Subject Matter Jurisdiction and Failure to State a Claim Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*, and the exhibits thereto, were filed on this 19th day of January, 2011, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/ Jane A. Robert
Jane A. Robert, Bar No. 19123