UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**JOSEPH N. BROYLES**       **CIV. ACTION NO. 3:10-857**
                            **JJB-CBW**
**V.**

**CANTOR FITZGERALD & CO, ET AL.**

## FIFTH REPORT OF SPECIAL MASTER

The defendants Stifle Financial Corporation ("Stifle Financial") and Stifle, Nicolaus & Co. Inc. ("Stifel Nicklaus" and collectively, "Stifle Entities") have moved the Court for an Order, in *limine,* excluding any testimony or evidence related to email communications made by Cathy Poe, an employee of Stifle Nicolaus, regarding the assumption of liabilities of Stone and Youngberg, LLC ("S&Y") by Stifle Financial. [Docket No.10-854, Record document 587]. The motion is opposed by plaintiffs, CA Funds. [Docket No. 10-854, Record document 671].

The Stifle Entities subsequently filed a "Supplement" to its motion [Docket No. 10-857, Record document 102] to which it attached, as exhibits, a sworn declaration of the Stifel Nicklaus employee, Cathy Poe, [Record document 102-1] and a sworn declaration of Poe's supervisor, Mimi Fister [Record document 102-2]. This filing then engendered a Motion to Strike those declarations filed by CA Funds [Record document 141], a Memorandum in Support thereof [Record document 141-1] with attached deposition excerpts, a Reply Memorandum in support of its Motion to Strike the Declarations [Record

document 162-2] and a Surreply by the Stifle Entities in opposition to the motion to strike the declarations filed by CA funds. [Record document 173-1].

Both the motion in *limine* to exclude the statements of Cathy Poe and the motion to strike the declarations of Poe and Fister were referred to the undersigned for Report and Recommendation.

For those reasons set out below, the undersigned **Recommends** that the motion in *limine* to exclude any testimony or evidence related to email communications made by Cathy Poe regarding the assumption of S&Y's liabilities by Stifle Financial [Docket No.10-854, Record document 587] be **denied** and the Motion to Strike the Declarations of Cathy Poe and Mimi Fister [Docket No. 10-857, Record document 141], be **denied as moot**.

### A. BACKGROUND

On July 25, 2011, Stifle Financial executed a Membership Interest Purchase Agreement ("MIPA"), by which it agreed purchase the entire membership interest in S&Y from S&Y's parent company, Stone & Youngberg Holdings, LLC. The MIPA provided that Stifle Financial would acquire S&Y's assets, but would not assume its liabilities. The MIPA further provided that Stone & Youngberg Holdings would indemnify and hold harmless the Stifle Entities and S&Y for any conduct of S&Y which occurred prior to the

acquisition.[1] Stifle Financial completed its purchase of S&Y's membership interest on October 1, 2011 and on December 14, 2011 S&Y assigned its assets to Stifle Nicklaus.

Cathy Poe was employed in the registration department of Stifle Nicklaus. In this capacity, in the second half 2011, she learned that Stifle Financial would acquire S&Y. That made it necessary for her to assist in the mass transfer (and dual registrations for a limited time) of certain registered representatives (apparently broker-dealers) from S&Y to Stifle Nicklaus so that there would be no break in the ability of Stifle Nicklaus to continue the operations of S&Y. In that regard, she communicated by letter and email with various State regulators notifying them of the change and requesting temporary dual registration for these representatives.

In these communications to the State regulators Poe wrote, in part, "Stifle Financial will assume all assets and liabilities of Stone and Youngberg, LLC."[2] It is this statement by Poe which the Stifle Entities seek to exclude, along with the testimony of Ms. Poe and her supervisor, Mimi Fister, relating to these communications.

Both Poe and Fister were deposed shortly after the emails were disclosed to the plaintiffs. Thereafter, Poe and Fister executed the sworn declarations (which the plaintiffs have moved to strike) in which they stated that the statement at issue had been made in error. Poe and Fister were then re-deposed by the plaintiffs.

---

[1] Docket No. 10-857, Record Doc. 587-3 §§ 2.1 and 8.2(a) and Record Doc. 587-5, p.2.
[2] Docket No. 10-857, Record Doc. 587-2, for example.

In her first deposition, Poe testified that she would not just "make something up" in her communications with the State regulators and if she was unsure about a statement to the regulators she would ask for assistance from someone with more knowledge.[3] Poe testified that she had no current understanding of the basis for making the statement at issue, but said she would have done something to confirm the accuracy of the statement before she sent it to the State regulators.[4]

By email of September 13, 2011, Poe asked Fister if Fister wanted to review the letter she was preparing to send to Florida regulators to "make sure that this sounds right". Fister replied that she did want to look at the letter, and she thereafter made some minor revisions to the letter before it was sent.[5] Fister testified that she would want to make sure that the statements in the letter were correct and accurate before it was sent. She further testified that she had no reason to believe that the statement in the draft letter to the effect that Stifle Financial was assuming the liabilities of Stone and Youngberg, LLC was inaccurate.[6] Fister further testified that she could not then recall her basis for believing that the statements in the letter were true, but said that she would have taken steps to ensure that they were accurate, including asking someone with knowledge of the facts, if necessary, before approving the letter.[7]

---

[3] Docket No. 10-857, Record Doc. 141-5, p. 7.
[4] Docket No. 10-857, Record Doc. 141-5, p. 8.
[5] Docket No. 10-857, Record Doc. 141-4, pp.3-6.
[6] Docket No. 10-857, Record Doc. 141-4, pp.6-7.
[7] Docket No. 10-857, Record Doc. 141-5, pp. 8-9.

Apparently all of the letters to the State regulators contained the language which the Stifle Entities have now moved to exclude.

After the depositions of Poe and Fister, the Stifle Entities supplemented their motion to exclude the statements by Poe by filing the sworn declarations of Poe and Fister in which both declarants declared under oath that they now understood the statement in the communications to the State regulators, that is, that Stifle Financial would assume the liabilities of S&Y, was incorrect.[8]

Both Poe and Fister were then re-deposed. Both testified in these subsequent depositions that they now believed that Poe's statement to the State regulators that Stifel was to assume the liabilities of S&Y was incorrect. Their understanding that Poe's statement was incorrect was based *solely and only* on information which they received from counsel in this case.[9]

### B. REASONS FOR RECOMMENDATION

The Stifle Entities argue that the evidence which they have moved to exclude is irrelevant, and, alternatively, if relevant should be excluded under Fed. R. Evid. 403 because the prejudice to the Stifle Entities outweighs the probative value of the evidence.

The Stifle Entities argue that the MIPA is the only document relevant to the question of whether or not Stifle Financial assumed the liabilities of S&Y. Since the MIPA is

---

[8] Docket No. 10-857, Record Doc. 102-1 and 102-2.
[9] Docket No. 10-857, Record Doc. 141-7 pp. 4-5 and Record Doc. 141-6, pp. 2 and 5.

unambiguous on this point (that no liabilities were assumed) and since the MIPA cannot be amended except in writing, the Stifel Entities argue that the statement of Poe is irrelevant. Alternatively, the Stifel Entities argue that if the Poe statement is relevant, it is only marginally so and that Poe's statement would only mislead and confuse the jury and therefore should be excluded pursuant to Rule 403.

The plaintiffs argue that Stifle assumed S&Y's liability in connection with Stifle Financial's subsequent decision to cause S&Y to transfer all of its assets, employees and business operations to its subsidiary, Stifle Nicklaus. According to plaintiffs, this occurred after the MIPA was signed, and the MIPA does not preclude Stifle from subsequently agreeing to assume S&Y's liability.

In short, plaintiffs argue that there was an assumption of S&Y's liability by Stifle separate from the MIPA, and that the statement of Poe, and the subsequent testimony of Poe and Fister, are relevant evidence of that agreement. Furthermore, the plaintiffs argue that this evidence is admissible to support the plaintiff's veil piercing and alter ego claims against Stifle.

Finally, plaintiffs argue that the statements to the State regulators that Stifle Financial would assume the liabilities of S&Y was a material commitment because Stifel was causing S&Y to withdraw as a member of the Financial Industry Regulatory Authority ("FINRA"), and therefore the regulators wanted to ensure that any obligations that S&Y owed to investors would be met by a financially responsible party after FINRA lost its

jurisdiction over S&Y and thereby its ability to compel payments of its obligations to investors, such as the plaintiffs herein.[10]

**1. Assumption of liability**

The Stifle Entities argue that the plaintiffs' implied assumption of liability theory is exceedingly difficult to prove and that Ms. Poe's email statements should be disregarded because she had nothing to do with the terms of the transaction between Stifle and S&Y. This argument overlooks the testimony of both Poe and Fister that, if necessary, they would have checked with more senior Stifle personnel make sure that the statements given to the regulators were correct. Does this absolutely prove that there was an assumption of liability by Stifle? No, course not. That is not the test, however. The test is whether or not the proffered evidence has "any tendency to make a fact more or less probable". Fed. R. Evid. 401(a). The Poe evidence meets that standard.

Next, the Stifle Entities argue that Poe's statement should be disregarded because she and Fister have said that the statement was a simple mistake. That is certainly a reasonable explanation, but is not an explanation that is up to the Court to accept. The credibility of the witnesses is up to the jury, not the Court. Thus, whether to accept the explanation of simple error is up to the jury. The Court cannot make that credibility

---

[10] FINRA is a primary regulator of broker-dealers, a regulatory body tasked with governing all business dealings conducted between dealers, brokers and all public investors. FINRA is a non-profit organization authorized by Congress to fulfill its function. Its power to expel members is its primary weapon to compel members to cooperate in its investigations. See www.finra.org.

determination, especially when the witnesses' testimony is that they now believe their prior testimony to be wrong, based *solely and only* on information they received from counsel.

### 2. *De facto* merger – veil piercing

Again, the Stifle Entities argue that this theory is exceedingly hard to prove as a narrow exception to the general rule of non-liability for the transferees of corporate property. The Stifle Entities are again right. The Stifle Entities concede, however, that one factor which courts consider in deciding *de facto* merger claims is whether or not the successor has assumed obligations necessary to continue the ordinary business operations of the predecessor.[11]

There was apparently communication between the regulators and Stifle on this issue. FINRA apparently wrote to S&Y on September 1, 2011 inquiring, in part, as to which entity would assume future liabilities involving litigation, arbitration or investigations which stemmed from the business conducted prior to the acquisition. In response, on September 7, 2011, S&Y replied that S&Y would continue to operate as a separate legal entity and would continue to retain all of its liabilities for litigation, arbitration and investigations.[12]

However, on September 13, 2011 Ms. Poe sent an email to Florida regulators in which she related that S&Y would file the form necessary (BDW) to withdraw its

---

[11] The Stifled Entities Supplement Motion in *Limine*, Docket No. 10-857, Record Doc. 102, p. 9 and fn. 27.
[12] Docket No. 10-854, Record Doc. 587-5, p. 2.

registration from FINRA, likely in the first quarter of 2012. This statement was *immediately preceded* by Poe's statement that Stifle would assume all of the assets and liabilities of Stone & Youngberg, LLC.[13]

Again, this is far from definitive proof of plaintiffs' theory, but it is relevant proof, and that is all that is required at this stage.

### 3. Material commitment

This correspondence by and between FINRA and S&Y and between Poe and the Florida regulators[14] also supports the plaintiffs' theory that the communications between Poe and the State regulators was a material commitment necessary to allow the transferring employees from S&Y to continue their work for the ultimate benefit of the Stifle Entities. Did Poe have the authority to make such a commitment? From the record before me, it appears that she did not. However, the record further shows that she and Fister testified that they would not have allowed those communications to go out to the regulators without confirming their accuracy, with their superiors if necessary.

Again, this may have been a simple mistake by Poe and Fister, but that decision is not for the Court to make; rather, that is a credibility decision that is left to the jury.[15]

---

[13] Docket No. 10-584, Record Doc. 587-6.
[14] Id.
[15] As further proof that the statement by Poe was a mistake, the Stifel Entities point out that some of the State regulators were sent copies of the MIPA, calling it "the full purchase agreement [that] sets forth all terms and conditions of the transaction." Docket No. 10-857, Record Doc. 157-2. Again, that supports the "simple mistake" argument, but it is not so conclusive so as to allow the Court to remove the credibility determination from the jury.

### 4. Rule 403

Rule 403, Fed. R. Evid., provides that the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues or misleading the jury. The Advisory Committee Notes to the Rule recognize that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

The standard to be applied in excluding evidence based on Rule 403 is an exacting one. The Fifth Circuit has said that:

> The exclusion of evidence under Rule 403 should occur only sparingly:
>
> Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none. (citation omitted) (emphasis in the original)

*United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir. 1993).

See also *JONI FONTENOT v. SAFETY COUNCIL OF SOUTHWEST LOUISIANA*, No. 2:16-CV-84, 2017 WL 3621193, at *5 (W.D. La. Aug. 21, 2017) (relying on *Pace*).

There is no question in my mind that the statement of Poe to the regulators, and the statements of Fister regarding her concerns that the statements to the regulators be accurate, are harmful to the Stifle Entities. In that sense, this evidence can be said to be prejudicial. But as the Courts recognized in *Pace* and *Fontenot*, *supra*., "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."[16]

Finally, only rarely and in the most extreme circumstance should evidence be excluded pretrial on Rule 403 grounds. In *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, (3d Cir. 1990), the Court said,

> … a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper.
>
> In sum, we hold that in order to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete enough on the point at issue to be considered a virtual surrogate for a trial record.

At p. 859-60.

My review of the reported cases confirms that the exclusion of evidence pursuant to Rule 403 before trial is exceedingly rare.

Quite simply, there is insufficient evidence in this record, at this time, for me to recommend that this evidence be excluded under Rule 403. The parties always have the right to move to exclude evidence at trial under Rule 403, depending on the state of the

---

[16] 10 F.3d at 1115-16 and 2017 WL 3621193 at *5. (emphasis in the originals)

evidence at the time of the offering. At that time, the trial judge will have the benefit of having heard all of the evidence then admitted, and can rule based on the state of the evidence at that time. However, at this point, I cannot recommend that this evidence be excluded based on Rule 403 because I do not have a sufficient showing of undue prejudice before me.

### C. Motion to Strike the Declarations of Poe and Fister

This motion was also referred to me for recommendation. While I read both of the declarations, I did not consider them in my recommendation to deny the motion to exclude. Of course, I did read, consider and, in part, relied on the depositions of Poe and Fister which were taken after the declarations were filed. In their depositions both Poe and Fister testified that the statements made by Poe in her communications with the regulators were incorrect. Given this testimony, there was no need to rely on the declarations themselves, and I did not.

Therefore, I recommend that the Motion to Strike the Declarations of Poe and Fister [Docket No. 857, Record Doc. 141] **denied as moot**.

### D. Conclusion

For the above reasons, I **RECOMMEND** that **"CA FUNDS' MOTION TO STRIKE DECLARATIONS OF KATHY POE AND MIMI FISTER"** [Docket No. 10-857, Record Document 141] be **denied** as **moot**. I further **RECOMMEND** that the Stifle

Entities' **"MOTION IN LIMINE TO EXCLUDE STATEMENTS MADE BY KATHY POE REGARDING STIFLE FINANCIAL'S ASSUMPTION OF LIABILITIES"** [Docket No. 10-854, Record Document 587] be **denied**.

**Any party wishing to object to this Recommendation shall file its objections no later than 21 days from service of this Recommendation.**

Baton Rouge, Louisiana, August 29, 2017.

C. MICHAEL HILL<br>SPECIAL MASTER